**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**August 14, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

RICHARD GROSVENOR,

       Plaintiff–Appellee,

v.

QWEST CORPORATION; QWEST
BROADBAND SERVICES, INC,

       Defendants–Appellants.

No. 12-1095

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:09-CV-02848-MSK-KMT)**

Peter J. Korneffel, Jr. (Kathryn R. DeBord with him on the briefs), Bryan Cave, LLP, Denver, Colorado, for the Defendants-Appellants.

Michael D. Lieder, Mehri & Skalet, PLLC, Washington, D.C. (Beth E. Terrell and Kimberlee L. Gunning, Terrell Marshall Daudt & Willie PLLC, Seattle, Washington; and Jeffrey A. Berens and Darby K. Kenney, Dyer & Berens LLP, Denver, Colorado, with him on the briefs), for the Plaintiff-Appellee.

Before **BRISCOE**, **KELLY**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Qwest Corporation and Qwest Broadband Services, Inc. (collectively, "Qwest") seek to appeal a district court order granting partial summary judgment. After Richard Grosvenor filed this putative class action, Qwest moved to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. The district court denied Qwest's motion and scheduled a trial to determine whether the parties had reached an agreement to arbitrate pursuant to 9 U.S.C. § 4. Both parties then moved for partial summary judgment. Qwest argued that the parties had entered into an arbitration agreement and that "Grosvenor should be compelled to arbitrate under the terms" of that agreement. However, Qwest did not make another request for an order to compel arbitration. Instead, Qwest indicated that it "will move for summary judgment on [another issue] and to compel the agreed-upon arbitration." In Grosvenor's motion for partial summary judgment, he argued that the agreement to arbitrate was illusory. The district court granted both motions in a single order, concluding that the parties entered into an agreement, but that the agreement was illusory and unenforceable.

Qwest argues that we possess interlocutory appellate jurisdiction to review the district court's summary judgment ruling because it constitutes "an order . . . denying a petition under section 4 of [the FAA] to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B). However, we have previously held that "in order to properly invoke appellate jurisdiction under the [FAA], the movant must either explicitly move to stay litigation and/or compel arbitration pursuant to the [FAA], or it must be unmistakably

-2-

clear from the four corners of the motion that the movant seeks relief provided for in the

FAA." Conrad v. Phone Directories Co., 585 F.3d 1376, 1379 (10th Cir. 2009). Because

we conclude Qwest has not satisfied this standard, we dismiss the appeal.

**I**

In December 2009, Grosvenor filed a complaint alleging that Qwest violated its

"Price for Life Guarantee" by raising the price for internet service after he signed up for

the program. Grosvenor asserted claims for breach of contract, promissory estoppel,

unjust enrichment, and violation of the Colorado Consumer Protection Act, Colo. Rev.

Stat. §§ 6-1-101, et seq. He sought to represent a proposed class of certain Qwest

internet customers.

Qwest responded with a motion to compel arbitration and to stay proceedings,

filed pursuant to 9 U.S.C. §§ 3 and 4. It cited to section 17 of its "Subscriber

Agreement," which states:

> Dispute Resolution and Arbitration; Governing Law. PLEASE READ
> THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU
> MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF
> DISPUTES THROUGH MANDATORY ARBITRATION WITH A FAIR
> HEARING BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A
> COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.
>
> (a) Arbitration Terms. You agree that any dispute or claim arising out of or
> relating to the Services, Equipment, Software, or this Agreement (whether
> based in contract, tort, statute, fraud, misrepresentation or any other legal
> theory) will be resolved by binding arbitration. The sole exceptions to
> arbitration are that either party may pursue claims: (1) in small claims
> court that are within the scope of its jurisdiction, provided the matter
> remains in such court and advances only individual (non-class, non-
> representative, non-consolidated) claims; and (2) in court if they relate

-3-

solely to the collection of any debts you owe to Qwest. The agreement further provides that arbitration will be conducted by the American Arbitration Association and that the FAA will govern the proceedings. In response to the motion, Grosvenor averred that, to the best of his knowledge, he had never seen the Subscriber Agreement and had never been advised of its existence.

Qwest then submitted competing evidence showing that Grosvenor first ordered internet service from Qwest in 2006 under a "click-to-accept" process. Before completing installation of Quest's software, a customer is presented with a "LEGAL AGREEMENTS" screen that advises him to read the terms of an agreement, "including arbitration," at a website address. The screen advises: "Your click on 'I accept' is an electronic signature to the agreements and contracts set out herein." A customer cannot install the software unless he clicks "I accept." Once a customer installs the software, Qwest automatically generates and sends a "Welcome Letter" to the customer, stating that the service is offered pursuant to the terms of a Subscriber Agreement. The letter provides a website address—the same address listed during the installation process described above—from which the customer can access the Subscriber Agreement, and states that the customer should call Qwest to cancel service within thirty days if he disagrees with those terms. When Grosvenor upgraded his internet service in 2007, Qwest sent a similar "Welcome Letter."

The district court denied Qwest's motion to compel arbitration and its motion for a stay. It concluded that "Grosvenor has raised material questions of fact as to contract

formation, including: whether he received the Subscriber Agreement, and whether he received the Welcome Letters." The court ordered the parties to "schedule a trial to determine whether a valid arbitration agreement exists." It also entered a scheduling order to govern "the formation proceedings on Defendant's Motion to Compel Arbitration."

Following discovery, Qwest filed a motion for partial summary judgment on the issue of whether Grosvenor had entered into an arbitration agreement. It argued that because the undisputed facts established contract formation and all claims at issue were "subject to mandatory arbitration under the terms of the Agreement and the Federal Arbitration Act . . . Grosvenor should be compelled to arbitrate under the terms of his Subscriber Agreement." Qwest requested the court "enter summary judgment that Qwest and Mr. Grosvenor entered into an arbitration agreement, as set forth in the Subscriber Agreement." Qwest's motion noted that Grosvenor had also "argued that the arbitration clause was unconscionable under state law by virtue of its class action waiver" in prior briefing. Qwest stated that the argument had been foreclosed by a recent Supreme Court case and that it "will move for summary judgment on the unconscionability issues and to compel the agreed-upon arbitration."

Grosvenor also moved for partial summary judgment, arguing that the Subscriber Agreement is illusory because Qwest "reserved to itself the unfettered right to amend" the contract. He pointed to section 4 of the Subscriber Agreement, which provides:

(a) at any time, effective upon posting to www.qwest.com/legal or any

written notice to you, including e-mail [Qwest may] . . . modify the Service and/or any of the terms and conditions of this Agreement . . . .
(b) upon 30 days notice to you [Qwest may] . . . change this Agreement or the Service in a way that directly results in a material and adverse economic impact to you. Qwest may reduce the foregoing notice period where commercially reasonable . . . .
Your continued use of the Service and/or the Equipment constitutes acceptance of those changes. You must immediately stop using the Service and Equipment and cancel your Service if you do not agree to the changes.

Based on this provision, Grosvenor claimed that "the Subscriber Agreement in general, and the Dispute Resolution Provision in particular, are illusory and hence not part of the contract between Qwest and Mr. Grosvenor." In its response to the motion, Qwest complained that Grosvenor's argument was raised for the first time after "two plus years of litigating Qwest's motion to compel arbitration." It argued that the issue of whether the Subscriber Agreement was illusory was an issue for the arbitrator to decide, and that the contract was not illusory in any event. Grosvenor countered that the district court already determined that it, rather than an arbitrator, would decide whether a valid contract had been formed, citing to the district court's order denying Qwest's motion to compel arbitration.

After the summary judgment motions were filed, but before briefing on those motions was complete, the court entered a final pre-trial order to "govern[] the formation proceedings on Defendant's Motion to Compel Arbitration." Grosvenor stated that the "only issue to be decided" was whether Qwest would be able to "meet its burden at trial to show a valid arbitration agreement exists." The order listed only two pending motions: the cross motions for summary judgment. In addition, the parties also noted that they

-6-

anticipated filing several motions in limine.

In its order disposing of both summary judgment motions, the district court concluded that "Grosvenor manifested his assent to clearly-disclosed contractual terms that, among other things, included an agreement to arbitrate disputes." However, it held that because "Qwest retained an unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and unenforceable." The court accordingly granted both motions for summary judgment and ordered the parties to set a scheduling conference "to address what remains to be done to prepare this matter for trial." Qwest filed a notice of appeal twenty-five days later. The notice of appeal identifies the summary judgment order by docket number as the order being appealed, characterizing it as a "final order denying Qwest's motion to compel arbitration."

**II**

Grosvenor argues in his answer brief that this court lacks jurisdiction over Qwest's appeal.[1] "[T]he question of this Court's jurisdiction (i.e., our appellate jurisdiction) is antecedent to all other questions." Lang v. Lang (In re Lang), 414 F.3d 1191, 1195 (10th

---

[1] We remind counsel that a motion to dismiss for lack of appellate jurisdiction "should be filed within 14 days after the notice of appeal is filed, unless good cause is shown." 10th Cir. R. 27.2(A)(3)(a). This Rule is particularly appropriate in cases involving an arbitrability dispute, given "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Nevertheless, because a "defect in subject matter jurisdiction can never be waived," Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076 (10th Cir. 1999), we must consider Grosvenor's argument.

Cir. 2005) (quotation and emphasis omitted). "Generally, only final decisions of the district court are appealable." Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1275 (10th Cir. 2001) (citing 28 U.S.C § 1291). However, Qwest does not argue § 1291 applies, but instead relies on the FAA as establishing our jurisdiction over its appeal. See Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1224 (10th Cir. 2004) ("The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter.").

## A

The FAA provides that "[a]n appeal may be taken from":

(1) an order—
    (A) refusing a stay of any action under section 3 of this title,
    (B) denying a petition under section 4 of this title to order arbitration to proceed,
    (C) denying an application under section 206 of this title to compel arbitration,
    (D) confirming or denying confirmation of an award or partial award, or
    (E) modifying, correcting, or vacating an award;
(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
(3) a final decision with respect to an arbitration that is subject to this title.

9 U.S.C. § 16(a). "We strictly construe statutes conferring jurisdiction." Vanderwerf v. Smithkline Beecham Corp., 603 F.3d 842, 845 (10th Cir. 2010). "[I]f there is ambiguity as to whether the instant statute confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005).

In Conrad v. Phone Directories Co., 585 F.3d 1376 (10th Cir. 2009), we thoroughly considered the scope of the FAA's interlocutory appeal provision. In that case, a plaintiff sued his former employer, advancing state tort and breach of contract claims. Id. at 1379. The employer filed a motion to dismiss in response to the complaint, asserting that the dispute was subject to arbitration under an employment agreement, that venue was improper, and that the complaint failed to state a claim. Id. Although "the arbitration agreement was an important part of [the] motion to dismiss, the motion did not ask the court to enforce the agreement under the FAA." Id. The motion stated that if "the Court does not dismiss this matter for improper venue, the Court should issue an order compelling arbitration and dismissing Plaintiff's claims," but it did not directly discuss § 3 or § 4 of the FAA. Conrad, 585 F.3d at 1379-80. "The only mention of either provision of the FAA came in a quotation in a parenthetical appended to the citation of a Third Circuit case . . . ." Id. at 1380. Although the district court dismissed some of the state tort claims, it denied the employer's request to dismiss the complaint in full based on the arbitration provision because "genuine issues of material fact exist as to the applicability . . . and as to the enforceability" of the employment agreement. Id. (quotation omitted). The employer filed an interlocutory appeal, asserting jurisdiction under 9 U.S.C. § 16(a). Conrad, 585 F.3d at 1380.

In considering our appellate jurisdiction, we noted that § 16(a) "ensur[es] that district court orders hostile to arbitration agreements can be immediately appealed" and that "our jurisdiction would be clear" if the employer had expressly filed a motion under

-9-

FAA §§ 3 or 4. Conrad, 585 F.3d at 1381. Because the order being appealed from denied a motion to dismiss, however, the dispositive question as to our jurisdiction was whether "the phrases 'under section 3' in § 16(a)(1)(A) and 'under section 4' in § 16(a)(1)(B) encompass not only motions explicitly brought pursuant to those provisions, but also motions that in some manner contemplate the applicability of §§ 3 or 4 without mentioning them by name." Conrad, 585 F.3d at 1381. Given that "Congress chose specifically to enumerate the limited conditions under which a non-final order may be appealed" in § 16(a), we concluded that the structure of the FAA "argues against our recognizing a further category of permitted appeals." Conrad, 585 F.3d at 1382. We also noted that "we are bound to construe statutes conferring jurisdiction narrowly," that "we prefer clear, bright-line rules" in the jurisdictional context, and that "there is a long-established policy preference in the federal courts disfavoring piecemeal appeals." Id.

Based on the foregoing factors, we held in Conrad that "in order to invoke the appellate jurisdiction provided in § 16(a), the defendant in the district court must either move to compel arbitration and stay litigation explicitly under the FAA, or must make it plainly apparent that he seeks only the remedies provided for by the FAA—namely, arbitration rather than any judicial determination—in his prayer for relief." 585 F.3d at 1385. Under this rule, the "surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA §§ 3 or 4." Conrad, 585 F.3d at 1385. Failure to do so "dramatically reduces the chances that an appellate court will find it has jurisdiction to review the denial of such a motion." Id. However,

we stopped short of holding that the caption is determinative:

> [T]he court must look beyond the caption to the essential attributes of the motion itself. The goal of this inquiry is to determine whether it is plainly apparent from the four corners of the motion that the movant seeks only the relief provided for in the FAA, rather than any other judicially-provided remedy. To do so, the court should look to the relief requested in the motion. If the essence of the movant's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under § 16(a).

Conrad, 585 F.3d 1385-86 (citation omitted).

Phrased differently, the rule in this circuit is as follows: "in order to properly invoke appellate jurisdiction under the [FAA], the movant must either explicitly move to stay litigation and/or compel arbitration pursuant to the [FAA], or it must be unmistakably clear from the four corners of the motion that the movant seeks relief provided for in the FAA." Id. at 1379. Several other circuits have adopted similar, although perhaps not identical, modes of analysis. See Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 698-99 (4th Cir. 2012) (in determining jurisdiction under the FAA, courts must "look to whether a motion evidences a clear intention to seek enforcement of an arbitration clause"); Wabtec Corp. v. Faiveley Transp. Malmo AB, 525 F.3d 135, 140 (2d Cir. 2008) (declining jurisdiction because motion "did not explicitly request the district court to direct that arbitration be held" (quotation omitted)); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 5 (1st Cir. 2004) (exercising jurisdiction over order denying motion for reconsideration that included "explicit request for a reference to" an arbitrator and thus "was effectively a request for

-11-

an order to arbitrate under section 4"); <u>Bombardier Corp. v. Nat'l R.R. Passenger Corp.</u>, 333 F.3d 250, 254 (D.C. Cir. 2003) (no jurisdiction to review order denying motion to dismiss that "exhibited no intent to pursue arbitration" but "sought outright dismissal with no guarantee of future arbitration").

**B**

In the appeal at bar, Qwest asserts that it is appealing an order denying its motion to compel arbitration. However, the only motion explicitly titled by Qwest as a motion to compel arbitration was denied by the district court on September 30, 2010. Qwest's notice of appeal, filed on March 19, 2012, is clearly untimely as to this order. <u>See</u> Fed. R. App. P. 4(a)(1)(A) (notice of appeal in a civil case generally "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from"). "A court of appeals acquires jurisdiction of an appeal only upon the filing of a timely notice of appeal; this requirement is mandatory and jurisdictional." <u>United States v. Torres</u>, 372 F.3d 1159, 1161 (10th Cir. 2004). Further, Qwest's notice of appeal does not identify the September 30, 2010, order. <u>See</u> Fed. R. App. P. 3(c)(1)(B) (notice of appeal must "designate the judgment, order, or part thereof being appealed").

Instead, Qwest's notice of appeal designates the district court's February 23, 2012, order as the subject of this appeal. And the notice of appeal is timely as to that order. Accordingly, the issue of whether we have appellate jurisdiction turns on whether the February 23 order is one "denying a petition . . . to order arbitration" within the meaning of 9 U.S.C. § 16(a)(1)(B). The order at issue is titled "Opinion and Order Granting

-12-

Motions for Summary Judgment." It identifies the parties' summary judgment motions, not Qwest's motion to compel arbitration, as the motions being ruled upon. It notes that Qwest's motion to compel arbitration was denied on September 30, 2010. And it recites the standards for summary judgment rather than discussing the criteria for deciding a motion to compel arbitration.

The order is thus not one denying a motion to compel arbitration, at least on its face. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 628 (2009) (appellate jurisdiction under FAA "must be determined by focusing upon the category of order appealed from"). Under Conrad, however, we must also look to the motions ruled upon to determine whether the FAA confers jurisdiction. See 585 F.3d at 1385-86. Grosvenor argues that Conrad precludes jurisdiction because Qwest is appealing from an order granting Grosvenor's motion for partial summary judgment. And it is clear that Grosvenor did not seek to compel arbitration in its motion for partial summary judgment. See id. at 1379 (to invoke interlocutory jurisdiction, "the movant must either explicitly move to stay litigation and/or compel arbitration pursuant to the [FAA], or it must be unmistakably clear from the four corners of the motion that the movant seeks relief provided for in the FAA") (emphases added)).

Qwest provides several arguments in response. First, it argues that Conrad does not stand for the proposition that the movant's requested relief is dispositive, but rather that the defendant's pleadings are the relevant filings. Qwest argued in response to Grosvenor's motion for partial summary judgment that the issue of illusoriness should be

decided by the arbitrator. And the district court rejected this argument in the order Qwest seeks to appeal. However, 9 U.S.C. § 16(a)(1)(B) refers to "an order . . . denying a petition under section 4 of this title to order arbitration to proceed." Id. The plain text of this provision suggests that an order granting the relief requested in a motion, and thus rebuffing an argument asserted in opposition, would not qualify because such an order cannot be meaningfully characterized as "denying a petition under section 4." Id. (emphasis added).

Nor do we think that Qwest's response can be considered a petition to order arbitration. Qwest did not request an order compelling arbitration in its response to Grosvenor's motion for summary judgment. See 9 U.S.C. § 4 (providing that a party "may petition" the district court "for an order directing that . . . arbitration proceed"). And to the extent Qwest sought such an order, it was obliged to move for one. See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Arguments asserted in response to a motion are generally not considered requests for an order. See Glenn v. First Nat'l Bank, 868 F.2d 368, 370 (10th Cir. 1989) (request for leave to amend asserted in response to a motion to dismiss did "not rise to the status of a motion" because it was "not an application for an order contemplated under the rules").

Second, Qwest points to its motion for summary judgment as the relevant filing. We question whether Qwest can appeal the district court's grant of its own motion for summary judgment. "A party generally cannot appeal from a judgment in its favor." Amazon, Inc., 273 F.3d at 1275 (10th Cir. 2001) (citation omitted); see also Buell

Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). To treat Qwest's motion as the basis of its appeal, we would have to characterize the district court's order as denying an implicit request for an order to compel arbitration contained in Qwest's motion for summary judgment.

Although Qwest noted in its motion that "Grosvenor should be compelled to arbitrate under the terms of his Subscriber Agreement," this reference to arbitration is not dispositive. In Conrad, we concluded that a motion to dismiss did not qualify as one seeking FAA relief despite the movant's request that if "the Court does not dismiss this matter for improper venue, the Court should issue an order compelling arbitration." 585 F.3d at 1379-80. Instead, the test set forth in Conrad for motions that are not captioned as seeking relief under the FAA is whether it is "unmistakably clear from the four corners of the motion that the movant seeks relief provided for in the FAA." Id. at 1379. In applying this test, we "look to the relief requested in the motion." Id. at 1385. Qwest did not ask the district court to enter an order compelling arbitration; it requested that the court "enter summary judgment that Qwest and Mr. Grosvenor entered into an arbitration agreement, as set forth in the Subscriber Agreement." And most tellingly, Qwest plainly stated that a formal motion to compel arbitration would be forthcoming: Qwest notes in the motion that it "will move for summary judgment on the unconscionability issues and to compel the agreed-upon arbitration." Far from making it "unmistakably clear" that it sought an order to compel arbitration, id. at 1379, this statement demonstrates that Qwest

-15-

was not seeking an order to compel arbitration in the motion for partial summary judgment itself. Instead, Qwest notified the district court that it would move for such an order in a future filing.

Qwest correctly notes that this case is not identical to <u>Conrad</u>. In particular, the defendant in <u>Conrad</u> never explicitly moved for an order compelling arbitration. <u>See</u> <u>id.</u> at 1379-80. In contrast, Qwest filed a motion to compel arbitration under 9 U.S.C. § 4 and to stay the district court proceedings. The district court denied those motions, concluding that material questions of fact were raised as to contract formation. It accordingly proceeded to schedule a trial to determine whether the parties had agreed to arbitrate as contemplated by 9 U.S.C. § 4. Under that statute, if a district court determines "the making of the arbitration agreement . . . [to] be in issue," in considering a petition to compel arbitration, "the court shall proceed summarily to the trial thereof . . . in the manner provided by the Federal Rules of Civil Procedure." <u>Id.</u> And as Qwest notes, the subsequent proceedings were directed toward resolving the issue of arbitrability raised in Qwest's motion to compel: both the scheduling order and the final pre-trial order state that they govern "the formation proceedings on Defendants' Motion to Compel Arbitration." Grosvenor indicated that the sole issue for trial was whether Qwest could "show a valid arbitration agreement exists."

However, the district court denied the motion to compel arbitration outright rather than reserving its ruling. <u>Contra</u> <u>Brooks v. Robert Larson Auto. Group, Inc.</u>, 2009 WL 2853452, at *4 (W.D. Wash. Sept. 1, 2009) (unpublished) (reserving ruling on a motion

to compel arbitration pending a trial "to determine whether Plaintiff signed the arbitration agreement pursuant to 9 U.S.C. § 4"). See generally Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1355 (Fed. Cir. 2004) (noting that "district courts might be well advised to defer acting on a motion to compel arbitration until the issues of arbitrability are finally resolved"). And the final pretrial order listed only two pending motions—the cross motions for summary judgment—indicating that the parties did not understand the district court to have deferred ruling. Under these circumstances, we think a defendant must expressly move, albeit a second time, for an order to compel arbitration, or at least file a motion that satisfies the test set forth in Conrad. See Fit Tech, Inc., 374 F.3d at 5 (conducting interlocutory review of order denying request to compel arbitration made for first time in motion for reconsideration).

Despite Qwest's general reference to the overall thrust of the pleadings below, 9 U.S.C. § 16 directs us to exercise jurisdiction only over a specific set of orders. Consistent with our preference for "bright-line" jurisdictional rules, Conrad, 585 F.3d at 1382, we will not look to the overall contours of district court litigation in determining whether an order is appealable. The district court's decision to proceed to trial on the formation issue under 9 U.S.C. § 4 cannot mean that every subsequent order is immediately appealable. See Bombardier Corp., 33 F.3d at 254 (rejecting argument that "any order hostile to arbitration may be immediately appealed" because such an interpretation "would significantly and improperly expand" the scope of 9 U.S.C. § 16).

In Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546 (1st

-17-

Cir. 2005), the First Circuit considered an interlocutory appeal of a district court order denying the defendant's motion to compel arbitration and an order granting the plaintiff's motion to strike the defendant's affirmative defense of mandatory arbitration. Id. at 550. The appellate court concluded that although it possessed jurisdiction over the former order, it lacked the power to review the latter. An order granting a motion to strike "has no footing within the FAA's cache of statutory exceptions to the final judgment rule." Id. at 551. Because "section 16(a) clearly enumerates the types of orders covered by the FAA's various jurisdictional shelters," the court "decline[d] to treat that provision as a general mechanism permitting the immediate appeal of any order hostile to arbitration." Campbell, 407 F.3d at 551. Like our sibling circuit, we are unwilling to recognize a "further category of permitted appeals" based on the degree of hostility to arbitration given our obligation to "construe statutes conferring jurisdiction narrowly." Conrad, 585 F.3d at 1382.

In its third and final argument in favor of appellate jurisdiction, Qwest contends that dismissing this appeal would result in "an FAA no man's land." Qwest argues that an appeal from the September 30, 2010 order denying its motion to compel arbitration would not have been "ripe." And it further claims that a plaintiff should not be permitted to rob a defendant of the right to an interlocutory appeal by obtaining partial summary judgment on an issue that would preclude arbitration. We disagree with these contentions.

Qwest appears to take the position that it could not have appealed the district

court's order denying its motion to compel arbitration because the court had not yet determined whether an arbitration agreement had been made. However, in Ansari v. Qwest Communications Corp., 414 F.3d 1214 (10th Cir. 2005), we joined several other circuits in holding "that § 16(a)(1)(B) does not require a final determination of the merits of a petition to compel arbitration." Ansari, 414 F.3d at 1217. We rejected a "final determination" requirement because the FAA "makes no such distinction. It expressly permits an appeal from a district court's order 'denying a petition under section 4 . . . to order arbitration to proceed.'" Id. at 1217 (quoting 9 U.S.C. § 16(a)(1)(B)). Numerous other circuits have similarly held that an order denying a motion to compel arbitration is immediately appealable even if the district court has not conclusively determined whether an agreement to arbitrate was made. See Madol v. Dan Nelson Auto. Group, 372 F.3d 997, 998-99 (8th Cir. 2004); Microchip Tech., 367 F.3d at 1355; Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 635-36 (4th Cir. 2002); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102-04 (3d Cir. 2000); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 363 (7th Cir. 1999).

Nor are we persuaded that defendants are in danger of losing the right to an interlocutory appeal under the circumstances presented by this case. Although Qwest argues that the jurisdictional difficulty is caused by Grosvenor's success in obtaining summary judgment on an issue that may preclude arbitration, defendants in Qwest's position can avoid any such dilemma by simply filing a motion to compel arbitration at the summary judgment phase of a 9 U.S.C. § 4 proceeding. Had Qwest sought an order

granting it summary judgment on the issue of contract formation and an order compelling arbitration, there would be no question as to our jurisdiction. Instead, Qwest indicated that it would file a motion to compel arbitration in a subsequent motion, but nevertheless filed an interlocutory appeal before doing so.

Further, we do not view an explicit request for an order compelling arbitration to be a mere formality. As the present case demonstrates, a party may well prevail on a motion for partial summary judgment as to the existence of an agreement to arbitrate without obtaining an order compelling arbitration. Had Qwest explicitly filed a motion to compel, Grosvenor would have been obliged to assert each and every available defense to mandatory arbitration in a single response. However, because Qwest merely asked for partial summary judgment, Grosvenor was not required to do so. Although he prevailed on his own motion for partial summary judgment as to the illusory nature of the Subscriber Agreement, Qwest anticipated that Grosvenor would also interpose an unconscionability defense to a forthcoming motion to compel arbitration. Accordingly, even if we exercised jurisdiction over this appeal and reversed, we would not finally resolve the issue of arbitrability. On remand, Grosvenor might assert unconscionability or some other defense to arbitration, potentially leading to yet another interlocutory appeal. Such a proposed procedure runs contrary to the well-established "preference in the federal courts disfavoring piecemeal appeals." Conrad, 585 F.3d at 1382; see also Oklahoma Tpk. Auth. v. Bruner, 259 F.3d 1236, 1241 (10th Cir. 2001) (noting that the "historic federal policy against piecemeal appeals . . . promotes judicial efficiency [and]

expedites the ultimate termination of an action").

Qwest is threatened by neither Scylla nor Charybdis. It was free to file an interlocutory appeal of the district court's prior denial of its motion to compel arbitration and it could have expressly requested an order compelling arbitration at the summary judgment phase. Because Qwest did not explicitly seek such an order, but instead indicated that a formal motion to compel arbitration would be forthcoming, we conclude that it did not meet its burden of making "unmistakably clear" that it sought "relief provided for in the FAA" in the filings that lead to this appeal. See Conrad, 585 F.3d at 1379. Accordingly, we lack jurisdiction to review the district court's order granting the parties' motions for summary judgment.

### III

For the foregoing reasons, the appeal is **DISMISSED**.