PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3676
_____

DEVON ROBOTICS, LLC; DEVON HEALTH SERVICES
INC.; JOHN A. BENNETT, M.D.

v.

GASPAR DEVIEDMA; MCKESSON CORPORATION

Gaspar DeViedma,
                                          Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-03552)
District Judge:  J. Curtis Joyner
_____

Argued: October 29, 2014

Before:   MCKEE, *Chief Judge*, GREENAWAY, JR. and
KRAUSE, *Circuit Judges.*

(Filed: August 5, 2015)
_____

Gary M. Samms (Argued)
Obermayer, Rebmann, Maxwell & Hippel
1617 John F. Kennedy Boulevard
One Penn Center, 19th Floor
Philadelphia, PA 19103

   *Counsel for Appellees*

James P. Golden (Argued)
Hamburg & Golden
1601 Market Street
Suite 3310
Philadelphia, PA 19103

   *Counsel for Appellant*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

This appeal stems from a failed agreement to distribute robotic medical devices, but the issue before us is a threshold question of jurisdiction under the Federal Arbitration Act (the "FAA"). The case comes to us in the unusual posture of an interlocutory appeal from an order denying summary judgment, a type of order not normally before this Court, but one the Appellant urges us to sweep within the ambit of appellate jurisdiction under § 16 of the FAA on the ground that it is the equivalent of an order denying a petition to compel arbitration. We hold that § 16 does not sweep so

broadly and therefore will dismiss this appeal for lack of jurisdiction.

## I. Background

### A. Factual History[1]

Appellee Devon Robotics, LLC ("Devon") acquired the rights to distribute two robotic medical devices, CytoCare and i.v. Station, from an Italian corporation, Health Robotics, S.r.l. ("Health Robotics"). Appellant Gaspar DeViedma ("DeViedma"), the general counsel for Health Robotics, negotiated the distribution contracts for both CytoCare and i.v. Station. Each contract contained an identical arbitration clause:

> Disputes between the parties arising out of, in relation to, or in connection with this agreement or the breach thereof shall be finally settled by binding arbitration. Any arbitration shall be conducted in English under the rules of the International Chamber of Commerce by a single, mutually-agreed-to arbitrator and shall be held in Geneva, Switzerland.

(App. 153 n.1.)

---

[1] This factual summary is derived from the District Court's Memorandum and Order on the parties' cross motions for summary judgment.

The CytoCare contract, which is the focus of this dispute, was executed in September 2008. By February 2009, CytoCare sales were not performing as the parties had hoped. To help Devon boost sales, the parties executed a Second Amendment to the CytoCare Distribution Agreement in which Health Robotics agreed to provide executive management consulting services to be performed by DeViedma. Pursuant to that amendment, DeViedma began acting as Devon's Chief Operating Officer ("COO").

Over the next few months, Devon conducted negotiations with McKesson Corporation ("McKesson") regarding a sublicensing agreement for CytoCare, but DeViedma allegedly obstructed McKesson's ability to complete a due diligence trip to Health Robotics's manufacturing facilities in Italy. Meanwhile, Devon failed to make franchise fee payments to Health Robotics, leading Health Robotics to draw down a $5 million line of credit that Itochu International, Inc. ("Itochu") had extended to Health Robotics and Devon had guaranteed. In turn, this led Itochu to bring a suit against Devon to recoup the $5 million as well as an unrelated debt.

Shortly thereafter, in June 2009, DeViedma stopped serving as Devon's COO, and Devon and Health Robotics executed a Fourth Amendment to the CytoCare Distribution Agreement reflecting that the management consulting services had been terminated. Health Robotics then terminated its CytoCare contract with Devon altogether and entered into a direct agreement with McKesson, with DeViedma signing the termination letter to Devon in his capacity as Health Robotics's general counsel. Health Robotics also sent Devon a notice alleging breaches of their i.v. Station agreement, and DeViedma e-mailed several of

4

Devon's hospital customers telling them that Devon faced financial difficulties and bankruptcy proceedings, and that Devon lacked staff qualified to manage i.v. Station robot installations.

### B.    Procedural History

Devon filed suit against DeViedma and McKesson in August 2009, claiming breach of fiduciary duty, tortious interference with current and prospective contractual relations, defamation, and conspiracy. In response, DeViedma filed a motion to dismiss on two grounds: first, that the complaint must be dismissed in favor of arbitration, and second, that Devon failed to state any claim upon which relief could be granted. The District Court granted the motion only in part.[2] DeViedma did not appeal that order, and extensive litigation followed. Over the next seventeen months, the parties expended considerable time and resources in discovery, producing hundreds of thousands of pages of documents and taking approximately twenty-six depositions.

DeViedma then filed a motion for summary judgment on the remaining two claims against him, which were for

---

[2] The District Court dismissed the claims for conspiracy and tortious interference with prospective contractual relations but found the others did not arise out of the agreements containing the arbitration clauses. In addition, the District Court dismissed claims brought by Appellees Devon Health Services, Inc. and Dr. John A. Bennett, and the parties subsequently stipulated to dismissal of the defamation claims.

breach of fiduciary duty and tortious interference with current contractual relations. He repeated his argument that the claims against him could only be brought in arbitration in Switzerland. In the Memorandum and Order that are the subject of this appeal, the District Court rejected his arguments in favor of arbitration, but granted summary judgment on Devon's tortious interference claim, leaving only Devon's breach of fiduciary duty claim. DeViedma then filed this interlocutory appeal seeking our review of the District Court's order holding that Devon's claims were not subject to arbitration, and Devon moved to dismiss the appeal for lack of jurisdiction.

## II.    Discussion

Devon argues that there are three independent reasons we lack jurisdiction over this appeal: that the District Court's Order denying summary judgment is not appealable under § 16 of the FAA because it is not an order "denying an application under section 206 of [Title 9] to compel arbitration," 9 U.S.C. § 16(a)(1)(C); that DeViedma's Notice of Appeal is defective because DeViedma inadvertently cited to 9 U.S.C. § 16(a)(1)(B) instead of 9 U.S.C. § 16(a)(1)(C);[3] and that DeViedma waived his right to compel arbitration because he opted not to seek an interlocutory appeal of the

---

[3] Subsection (B) of § 16 permits an appeal from an order "denying a petition under [9 U.S.C. § 4] to order arbitration to proceed," whereas Subsection (C) permits an appeal from an order "denying an application under [9 U.S.C. § 206] to compel arbitration." 9 U.S.C. § 16(a)(1)(B), (C).

District Court's denial of his motion to dismiss and instead engaged in protracted litigation.[4]

[4] Devon raises this argument as a bar to jurisdiction, although we have generally treated waiver of the right to compel arbitration as a merits issue, not a jurisdictional one. *See, e.g.*, *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011).

In addition, Devon argues, on the merits, that DeViedma cannot compel arbitration because he was not a party to the contracts containing arbitration clauses—a contention we note may also bear on jurisdiction, as a party must allege a "prima facie case of entitlement" to arbitration in order to obtain interlocutory review under § 16(a) of the FAA. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 212-13 (3d Cir. 2007); *see also Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 43, 46 (1st Cir. 2008) (analyzing a party's status as a non-signatory as both a jurisdictional and merits issue). DeViedma counters, first, that he is entitled to arbitration because he was acting at relevant times as an agent of signatory Health Robotics. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("In keeping with the federal policy favoring arbitration, we . . . will extend the scope of the arbitration clauses to agents of the party who signed the agreements."). Second, he asserts that Devon should be equitably estopped from avoiding arbitration because its claims are closely intertwined with the CytoCare contract. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201-02 (3d Cir.

In such a situation, "there is no mandatory 'sequencing of jurisdictional issues,'" and we enjoy "leeway 'to choose among threshold grounds for denying audience to a case on the merits'" in the order that best serves judicial economy. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 435-36 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999)). We need not reach Devon's alternative arguments because we conclude we lack jurisdiction under § 16(a)(1)(C), and, therefore, this appeal must be dismissed.

### A.    Orders Appealable Under § 16(a)(1)(C)

In the ordinary course, we possess jurisdiction over only "final decisions of the district courts of the United States." 28 U.S.C. § 1291. The FAA, however, provides for appellate jurisdiction of certain categories of interlocutory orders, including orders "denying an application under section 206 . . . to compel arbitration." 9 U.S.C. § 16(a)(1)(C). Devon contends that we lack jurisdiction under that provision because DeViedma is appealing from not an order denying an application under § 206 to compel arbitration but, rather, a motion for summary judgment in favor of arbitration, and "[t]he denial of a summary judgment motion is not a final order," *United States v. Spears*, 859 F.2d

2001) (collecting cases compelling signatories on basis of equitable estoppel to arbitrate against non-signatories claims that were intertwined with contracts containing arbitration clauses). We have no occasion to address these arguments because we will dismiss for lack of jurisdiction on other grounds.

284, 286 (3d Cir. 1988) (citing *Boeing Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 370 F.2d 969, 970 (3d Cir. 1967)).

In *Harrison v. Nissan Motor Corp.*, 111 F.3d 343 (3d Cir. 1996), we identified a similar issue: whether to interpret § 16 of the FAA as reaching the denial of a motion to dismiss in favor of arbitration. *See* 111 F.3d at 348. We acknowledged there is some logic to treating a motion to dismiss in favor of arbitration like a motion to compel arbitration under § 16, but also posited that "linguistically, a motion to dismiss, even for failure to pursue the statutorily provided threshold arbitral remedy, is a far cry from a 'motion to compel arbitration.'" *Id.* at 349. Because we dismissed the appeal for lack of jurisdiction on different grounds, however, we did not reach the issue. We do reach it today and conclude that § 16(a)(1)(C) does not extend to denials of motions for summary judgment.

### 1.       Statutory Text

Our analysis begins with the statutory text. Section 16 of the FAA provides that:

(a)    An appeal may be taken from—

(1)    an order—

(A)    refusing a stay of any action under section 3 of this title,

(B)    denying a petition under section 4 of this title to order arbitration to proceed,

(C)    denying an application under section 206 of this title to compel arbitration,

(D)    confirming or denying confirmation of an award or partial award, or

(E)    modifying, correcting, or vacating an award;

(2)    an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3)    a final decision with respect to an arbitration that is subject to this title.

9 U.S.C. § 16(a). As the Supreme Court instructed in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), "we apply the 'plain language of the statutory text' in interpreting the FAA." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (quoting *Green Tree*, 531 U.S. at 88). "We do not look past the plain meaning unless it produces a result demonstrably at odds with the intentions of its drafters or an outcome so bizarre that Congress could not have intended it." *Mitchell v. Horn*, 318 F.3d 523, 535 (3d Cir. 2003) (citations and quotation marks omitted).

Further, the Supreme Court has repeatedly held that "statutes authorizing appeals are to be strictly construed." *Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511, 515

10

(2007) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 43 (1983)) (internal quotation marks omitted). That command carries extra force for statutes authorizing interlocutory appeals, which are exceptions to the final decision rule of 28 U.S.C. § 1291 and "the long-established policy against piecemeal appeals." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978). Thus, "we must construe the scope of the provision with great care and circumspection" and "approach this statute somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 446-47 (3d Cir. 1982) (quoting *Switz. Cheese Ass'n v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966)) (internal quotation marks omitted).

Here, the plain language of the FAA provides no support for exercising jurisdiction over an order denying a motion for summary judgment. Even when motivated by a conclusion that claims are not subject to arbitration, an order denying summary judgment is not an order "denying an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(C); *see Harrison*, 111 F.3d at 349. And under the canon of *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others"), Congress's enumeration of several categories of appealable orders, but not orders denying summary judgment, indicates that Congress intended orders denying summary judgment to fall outside the scope of § 16. *See, e.g.*, *Delaware Cnty. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014).

### 2. Statutory Structure

11

The structure of the FAA further compels us to read § 16 as excluding orders denying summary judgment. Section 16 is strikingly specific in describing the categories of orders from which we may hear interlocutory appeals. It names orders "denying a *petition* under section 4 of this title to order arbitration to proceed" and orders "denying an *application* under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(B), (C) (emphasis added). These references to §§ 4 and 206 are telling.

Section 4 outlines a procedure for a party to "petition" a court for "an order directing that such arbitration proceed," not an order granting summary judgment. 9 U.S.C. § 4. Section 206 similarly provides that a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States"; it does not provide that a court may grant summary judgment. 9 U.S.C. § 206. Had Congress defined the categories of appealable orders using more malleable language—such as "orders denying motions to compel arbitration," "orders denying requests to compel arbitration," "orders refusing to enforce arbitration agreements," or "orders hostile to arbitration"—the argument for jurisdiction over *some* orders denying summary judgment might be stronger. But Congress's decision to specify denials of § 4 petitions or § 206 applications indicates that § 16 is not so elastic.[5]

---

[5] For simplicity's sake, we refer in this opinion to § 4 petitions and § 206 applications interchangeably as motions to compel arbitration.

We conducted a similar analysis of the FAA in *Lloyd*, where we considered § 3 of the statute. Section 3 provides that, upon the application of a party, a district court "shall" stay proceedings that are referable to arbitration. 9 U.S.C. § 3.[6] In *Lloyd*, we held that a district court lacked discretion to dismiss, rather than stay, a case under § 3 where the parties had requested a stay and not a dismissal. 369 F.3d at 269. After reviewing the text of § 3, we opted to "side with those courts that take the Congressional text at face value" and reasoned that the statute's "directive that the Court 'shall' enter a stay simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach." *Id.*

We also analyzed whether exercising jurisdiction was consistent with the structure of the FAA. We noted the ongoing role of the district court after sending all of the claims in a lawsuit to arbitration, including resolving disputes

_____

[6] In full, this section states: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

regarding the appointment of an arbitrator, compelling witnesses, and entering judgment on an award. *Id.* at 270 (citing 9 U.S.C. §§ 5, 7, 9-11). If a case were dismissed rather than stayed, the parties would have to file a new action each time the court's assistance was required, and the dispute could be assigned to different judges over the course of the arbitration. *Id.* Furthermore, whereas an order granting a stay under § 3 is not immediately appealable under 9 U.S.C. § 16(b),[7] an order dismissing claims in favor of arbitration *is* immediately appealable because it is a final order. *Lloyd*, 369 F.3d at 270. Consequently, construing § 3 as permitting district courts to dismiss claims instead of staying them would have altered the statutory scheme of appeals. Ultimately, we held that a "literal reading of § 3" was the only reading

---

[7] Section 16(b) provides that:

Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

> (1) granting a stay of any action under section 3 of this title;
> (2) directing arbitration to proceed under section 4 of this title;
> (3) compelling arbitration under section 206 of this title; or
> (4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16(b).

consistent with the structure of the FAA and the strong national policy in favor of arbitration. *Id.* at 271.

So, too, must we construe § 16 by its plain terms. Consider the procedures § 4 specifies for § 16 motions to compel arbitration: A party's ability to "petition any United States district court . . . for an order directing that . . . arbitration proceed" is conditioned on the opposing party's "failure, neglect, or refusal . . . to arbitrate," and the petitioner must give the opposing party "[f]ive days' notice in writing" of the petition. 9 U.S.C. § 4.[8] Moreover, the inquiry a district court is required to undertake in analyzing a motion to compel arbitration differs significantly from the analysis required for a motion for summary judgment. As we explained in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764 (3d Cir. 2013), where "the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions." *Id.* at 776 (internal citations and quotation marks omitted).

Because of these prescribed procedures, equating a denial of summary judgment with a denial of a motion to compel under § 16 could be quite consequential. For

---

[8] Under § 208, the requirements of § 4 apply to § 206 applications as well, provided there is no conflict between the two provisions. *See Control Screening LLC v. Technological Application & Prod. Co. (Tecapro), HCMC-Viet.*, 687 F.3d 163, 170-71 (3d Cir. 2012).

15

example, a party trying to enforce an arbitration agreement but seeking to avoid trial on the issue of arbitrability could file a motion for summary judgment instead of a § 4 petition (or § 206 application) and then seek immediate review if the motion is denied. Even if any concerns about these kinds of procedural differences would be modest in practice, they indicate that construing § 16 to open the door to interlocutory appeals from orders denying motions for summary judgment is incompatible with the structure of the FAA. Therefore, we conclude that § 16 "simply cannot be read" to grant us jurisdiction over orders denying motions for summary judgment. *See Lloyd*, 369 F.3d at 269.

## B.  Our Approach to Applying § 16(a)(1)(C)

That conclusion, however, does not necessarily end our inquiry, for the question remains whether we should construe the order denying DeViedma's motion for summary judgment as a denial of a motion to compel arbitration. Most Courts of Appeals have addressed this question only in the context of motions to dismiss, and they have answered it in a variety of ways.

At one end of the spectrum, the D.C. Circuit has adopted a narrow approach to jurisdiction under § 16, declining to "treat" the defendant's motion as something other than a Rule 12(b)(6) motion to dismiss and reasoning that the "principle of narrow construction . . . counsels against broad construction of a motion forwarded for review." *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 254 (D.C. Cir. 2003). The *Bombardier* court went on to explain that "even if [it] were to construe a motion to dismiss more broadly in some circumstances," it would not do so there, primarily because the motion to dismiss "exhibited no

16

intent to pursue arbitration—indeed, it sought outright dismissal with no guarantee of future arbitration." *Id.*; *see also Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 140 (2d Cir. 2008) (citing *Bombardier*, 333 F.3d at 254) (declining to exercise jurisdiction where a motion to dismiss did not explicitly or implicitly request the district court to "direct that arbitration be held" (internal quotation marks omitted)).

At the other end are the First and Sixth Circuits, which have adopted a broad approach. Thus, in *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1 (1st Cir. 2004), the court treated the defendant's request for dismissal in favor of arbitration "as encompassing the lesser alternative remedy of a stay and reference" because "no one ha[d] been prejudicially misled by [its] request for an over-favorable remedy of dismissal." *Id.* at 6; *see also Sourcing Unlimited*, 526 F.3d at 46 ("A movant's choice to request dismissal rather than a stay of proceedings during referral to arbitration is within the ambit of § 16(a)."). And the Sixth Circuit has held simply that § 16 grants appellate jurisdiction over "refusal[s] to enforce, through dismissal or stay, an agreement to arbitrate." *Simon v. Pfizer, Inc.*, 398 F.3d 765, 772 (6th Cir. 2005); *accord Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 501 (6th Cir. 2011) (citing *Simon*, 398 F.3d at 772-73) ("The district court's denial of Main Street's motion to dismiss, which was based on the parties' arbitration clause, is independently reviewable under the Federal Arbitration Act . . . .").

The Tenth Circuit, on the other hand, has taken a functional approach, focusing on the relief requested by a motion and holding that "in order to invoke the appellate jurisdiction provided in § 16(a), the defendant in the district

17

court must either move to compel arbitration and stay litigation explicitly under the FAA, or must make it plainly apparent that he seeks only the remedies provided for by the FAA—namely, arbitration rather than any judicial determination—in his prayer for relief." *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1385 (10th Cir. 2009). The court in *Conrad* thus dismissed the appeal because, despite "mention[ing] that the court might compel arbitration in one sentence of its memorandum," the appellant's motion asked only for dismissal, not for any relief under the FAA. *Id.* at 1386. The Fourth Circuit is in accord. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 698-99 (4th Cir. 2012) (articulating an approach focusing on the relief requested in a motion); *see also Grosvenor v. Qwest Corp.*, 733 F.3d 990 (10th Cir. 2013) (applying *Conrad* to an order granting cross motions for partial summary judgment).

We now join the Tenth and Fourth Circuits in focusing our § 16(a) inquiry on a movant's requested relief. While the analytical approach we adopt here will not turn solely on the caption of a motion, we have two concerns with looking much farther. First, construing motions as "petitions under section 4 of this title to order arbitration to proceed" or "applications under section 206 of this title to compel arbitration," when they are not, has the effect of expanding the scope of § 16 when our mandate is to construe it narrowly. *See supra* at 9-11. Second, jurisdiction over an appeal "must be determined by focusing upon the category of order appealed from," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)), and in fashioning any rule of appellate jurisdiction, predictability is paramount, *see Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S.

18

527, 547-48 (1995); *Carroll v. United States*, 354 U.S. 394, 404-06 (1957) ("Appeal rights cannot depend on the facts of a particular case. The Congress necessarily has had to draw the jurisdictional statutes in terms of categories."). Allowing our jurisdiction to turn on a case-by-case evaluation of how central an arbitration clause is to a party's argument for dismissal or summary judgment is the antithesis of predictability. Both of these concerns counsel against determining jurisdiction based on the contents, rather than the caption, of a motion.

Nonetheless, we recognize the need for a limited look beyond the caption itself, both to ensure that a true motion to compel is not overlooked and to ensure that parties cannot "'game' the captions of their motions in an effort to gain an interlocutory appeal where none is warranted." *Conrad*, 585 F.3d at 1385. We have charted this course before in construing orders under 28 U.S.C. § 1292(a), which provides for appellate jurisdiction over certain kinds of interlocutory appeals, including appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).[9] In an opinion by then-Judge Alito, dismissing an appeal for lack of jurisdiction under § 1292(a)(1), we explained that "when determining our jurisdiction, we must examine the substance

---

[9] The Tenth Circuit found its own analysis of § 1292(a)(1) instructive in developing an analytical approach to § 16 of the FAA. *See Conrad*, 585 F.3d at 1385 (citing *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007)).

of the order rather than merely its language." *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 207 (3d Cir. 1999) (citing *Cromaglass Corp. v. Ferm,* 500 F.2d 601, 604 (3d Cir. 1974) (en banc)). We noted that "the labels attached by the district court to its order are not determinative," *id.* (quoting *Gregory v. Depte,* 896 F.2d 31, 38 n.14 (3d Cir. 1990) (Becker, J., concurring in part and dissenting in part)) (internal quotation mark omitted), and thus looked to the operative terms of the January 1998 order before us as well as the underlying motion, which was a "motion seeking clarification of the original restraining order," *id.* at 206. We then concluded that the order did not modify a June 1997 injunction, but rather, clarified its scope, notwithstanding the district court's use of the term "MODIFIED" in its January 1998 order, and that, as such, it was not appealable under § 1292(a)(1). *Id.* at 207.

Likewise, we hold that to determine whether an order constitutes an order that is appealable under § 16, we examine the label and the operative terms of the district court's order,[10]

---

[10] We recognize that many, if not most, district court orders have no label or title besides "ORDER." Where that is the case, we will focus on the terms of the order. In determining jurisdiction under § 16, however, we decline to conduct an extensive review of a district court's accompanying memoranda. *See Conrad*, 585 F.3d at 1384 (rejecting an approach that "would require courts of appeals carefully to parse the district court motions and memoranda to determine, factually, whether the arguments pressed in the district court sufficiently raised the concerns of the FAA to deem the motion brought 'under section 3' or 'under section

as well as the caption and relief requested in the underlying motion. An explicit reference to the FAA, namely §§ 3, 4, or 206, in the caption of a motion is not dispositive, although "those hoping to avail themselves of the immediate appeal provided for in the FAA would do well" to "caption the[ir] motion in the district court as one brought under [the] FAA." *Conrad*, 585 F.3d at 1385. We have exercised jurisdiction where motions are labeled simply—but clearly—"motions to compel arbitration," so a party's failure to cite the governing provision of the FAA does not necessarily preclude jurisdiction. *See, e.g.*, *Guidotti*, 716 F.3d at 770-71 & n.3. Nor does a district court's subsequent mislabeling of a properly-captioned motion to compel arbitration as a motion to dismiss or for summary judgment always place an order outside the scope of § 16. *Cf. Asbestospray*, 182 F.3d at 207 (attributing the district court's use of the term "MODIFIED" in its order following a motion to clarify to a "mistake in draftsmanship"). But if a motion does not at least request an order compelling arbitration or an order directing that arbitration proceed, then the denial of that motion is not appealable under § 16(a)(1)(B) or (C). Mere "offhand references" to the FAA or to arbitration are not sufficient. *See Conrad*, 585 F.3d at 1386.

Importantly, we do not read § 16 as barring jurisdiction where both a motion to compel arbitration and a

_____

4'"); *cf. Arthur Andersen*, 556 U.S. at 628-29 (expressing a preference for determining jurisdiction under § 16 by focusing on the "category of order appealed from" rather than engaging in a fact-intensive jurisdictional inquiry).

motion to dismiss (or a motion for summary judgment) are made in the alternative. While the FAA does not discuss a remedy of dismissal, it does not explicitly preclude requests for multiple forms of relief, and in *Guidotti*, we exercised jurisdiction under § 16 where the defendants filed motions to dismiss simultaneously with their motions to compel arbitration. *See Guidotti*, 716 F.3d at 767. Other courts have also exercised jurisdiction over appeals where defendants filed motions to compel arbitration or, in the alternative, to dismiss. *See, e.g.*, *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1121 (11th Cir. 2010); *Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 524-25 (8th Cir. 2006); *see also Grosvenor*, 733 F.3d at 1000 ("Had Qwest sought an order granting summary judgment on the issue of contract formation *and* an order compelling arbitration, there would be no question as to our jurisdiction."). However, we decline to treat a "request for an over-favorable remedy of dismissal," *Fit Tech*, 374 F.3d at 6, as including a request for an order compelling arbitration. Because the former would not invoke the statutory requirements of § 4 of the FAA, it cannot trigger the right to interlocutory appeal under § 16. *Cf. Lloyd*, 369 F.3d at 270-71 (analyzing the incompatibility of the remedy of dismissal and the statutory scheme of the FAA).

## C.     Application to DeViedma's Appeal

Given the analytical framework we adopt today, the order before us is clearly not appealable under § 16. The Order provided: "Defendant Gaspar DeViedma's Motion for Summary Judgment (Doc. Nos. 81, 82, and 84) is DENIED as to Count IV for Breach of Fiduciary Duty. The Motion is otherwise GRANTED." (App. 3.) It made no reference to a motion to compel or to the FAA. As for DeViedma's motion,

22

the motion was entitled, "Motion for Summary Judgment of Defendant Gaspar DeViedma," and it began: "Pursuant to Federal Rule of Civil Procedure 56, defendant Gaspar DeViedma moves for summary judgment on Counts IV and V of the First Amended Complaint." (DeViedma's Mot. for Summ. J. 1, ECF No. 81.) It went on to state: "Mr. DeViedma respectfully requests that this Court enter summary judgment in its favor and dismiss plaintiffs' case with prejudice." (*Id.*) In sum, DeViedma's motion was not captioned as a motion to compel, did not reference § 4 or § 206, and did not request an order compelling arbitration. Rather, it was captioned as a motion for summary judgment, referenced Rule 56, and requested only summary judgment and dismissal with prejudice.[11] Further, there is no indication that the purported motion to compel complied with the procedural requirements of § 4. Even if we presumed Devon's "failure, neglect, or refusal . . . to arbitrate," there is no indication that DeViedma gave Devon "[f]ive days' notice in writing" of his impending motion to compel via "[s]ervice . . . in the manner provided by the Federal Rules of Civil Procedure." 9 U.S.C. § 4. Therefore, the motion was clearly

---

[11] Looking at DeViedma's Memorandum of Law in support of the motion would not change our conclusion. *See* App. 186 ("Pursuant to Fed. R. Civ. P. 56, defendant . . . moves for summary judgment in his favor . . . ."); App. 189 ("DeViedma is entitled to a dismissal with prejudice of the claims against him . . . ."); App. 243 (stating in the conclusion that: "DeViedma is entitled to summary judgment in his favor on all claims against him . . . , and these claims should be dismissed with prejudice.").

23

one for summary judgment, not to compel arbitration, and we lack jurisdiction over the order denying it.

We accept at face value that Devon was on notice about DeViedma's preference for arbitration over litigation. Indeed, Devon acknowledged as much in its opposition to DeViedma's summary judgment motion, and the District Court even remarked, in its Order: "We revisit whether Devon must be compelled to arbitrate its claims against DeViedma . . . ." (App. 24.) Thus, no one was "prejudicially misled" in this case by DeViedma's styling of his motion as a motion for summary judgment rather than a motion to compel. *See Fit Tech*, 374 F.3d at 6. But our jurisdiction does not turn on whether the non-moving party was prejudiced or confused. Rather, it turns on the category of the order from which an appeal is taken, and we identify that category by looking to the terms of the order, the caption of the underlying motion, and the relief requested within. Because DeViedma filed a motion for summary judgment and not a motion to compel arbitration, we lack jurisdiction under § 16 of the FAA.

## III.   <u>Conclusion</u>

We conclude that the District Court's denial of DeViedma's Motion for Summary Judgment is not an appealable order under § 16(a)(1)(C) of the FAA. Accordingly, we will dismiss this interlocutory appeal for lack of jurisdiction.

24