PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1555
_____

BOBBIE JAMES, on behalf of themselves and
all others similarly situated;
CRYSTAL GIBSON, on behalf of themselves and
all others similarly situated;
BETTY KING, on behalf of themselves and all
others similarly situated;
BARBARA SKLADANY, on behalf of themselves and
all others similarly situated;
MARK SKLADANY, on behalf of themselves and
all others similarly situated;
MILAN SKLADANY, on behalf of themselves and all
others similarly situated;
DR. JOHN F. CROW, on behalf of themselves and
all others similarly situated
v.

GLOBAL TELLINK CORP;
INMATE TELEPHONE SERVICE; DSI ITI LLC

Global TelLink Corporation and DSI-ITI LLC,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-13-cv-04989)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2016

Before: CHAGARES, HARDIMAN, and SCIRICA,
Circuit Judges

(Filed: March 29, 2017)



James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
Carella, Byrne, Cecchi, Olstein, Brody & Agnello
5 Becker Farm Road
Roseland, NJ 07068

James A. Plaisted, Esq.
Lin C. Solomon, Esq.
Pashman Stein Walder Hayden
21 Main Street
Hackensack, NJ 07601

    *Counsel for Plaintiffs-Appellees*

Robert J. Herrington, Esq.
Greenberg Traurig
1840 Century Park East
Suite 1900
Los Angeles, CA 90067


Philip R. Sellinger, Esq.
Aaron Van Nostrand, Esq.
Greenberg Traurig
500 Campus Drive, Suite 400
Florham Park, NJ 07932

*Counsel for Defendants-Appellants*

————————

OPINION OF THE COURT

————————


HARDIMAN, Circuit Judge

Global Tel*Link Corporation, Inmate Telephone Service, and DSI-ITI LLC (collectively, GTL), appeal the District Court's order denying their motion to compel arbitration against Bobbie James and other putative class action plaintiffs who used GTL's prison phone services. The question presented is whether Appellees agreed to be bound by the terms of use contained on GTL's website, even though they never visited it. Because the

3

District Court properly held that Appellees did not agree to arbitrate, we will affirm.

## I

GTL provides telecommunications services that enable inmates at state and local correctional facilities to call family, friends, attorneys, and other approved persons outside the prisons. GTL is the sole provider of these services in New Jersey. Users can sign up for an account and deposit funds either through GTL's website or through an automated telephone service that uses an interactive voice-response system with standardized scripts and prompts.

People who create an account through the website are shown a copy of GTL's terms of use and must click a button that says "Accept" to complete the process. Those who create an account by telephone receive the following audio notice:

> Please note that your account, and any transactions you complete . . . are governed by the terms of use and the privacy statement posted at www.offenderconnect.com. The terms of use and the privacy statement were most recently revised on July 3, 2013.

App. 125. Unlike web users, those who set up accounts by telephone are not required to indicate their assent to the terms of use.

4

GTL's terms of use contain an arbitration agreement and a class-action waiver, and users have 30 days to opt out of both of these provisions. They also state that using the telephone service or clicking the "Accept" button on the website constitutes acceptance of the terms, and users have 30 days to cancel their accounts if they do not agree to the terms.

Plaintiffs in this case are inmates and their relatives or friends who used GTL's services. Four of them opened accounts by telephone, and one opened an account through GTL's website.[1] In August 2013, Plaintiffs filed a putative class action alleging that GTL's charges were unconscionable. They alleged violations of the New Jersey Consumer Fraud Act, the Federal Communications Act (FCA), the Takings Clause of the Fifth Amendment, and various New Jersey state laws. GTL moved to dismiss or stay the matter, arguing that the Federal Communications Commission (FCC) had primary jurisdiction. In September 2014, the District Court stayed the case until either the FCC made a determination or Plaintiffs withdrew their claims arising under the FCA. Plaintiffs decided to withdraw their FCA claims.

GTL answered the complaint in November 2014 and filed an amended answer in March 2015, asserting as an affirmative defense that some of the Plaintiffs' claims were subject to binding arbitration. GTL moved to compel arbitration five months later.

---

[1] Bobbie James, Betty King, Barbara Skladany, and Milan Skladany opened accounts by telephone, and Crystal Gibson opened an account through the website. It is unclear how John Crow and Mark Skladany opened accounts.

5

The District Court denied GTL's motion to compel arbitration with respect to Plaintiffs who opened accounts by telephone.[2] The Court found that, although Plaintiffs were notified that GTL's service was "governed by the terms of use," they were not informed that "use of the service alone constituted an acceptance of these terms." *James v. Global Tel\*Link Corp.*, 2016 WL 589676, at \*7 (D.N.J. Feb. 11, 2006). They therefore "had neither the knowledge nor intent necessary to provide 'unqualified acceptance.'" *Id.* (citation omitted). "Consequently, without an understanding that they were accepting to be bound by the [terms of use], which included an agreement to arbitrate, there was no 'legally enforceable contract' created between GTL and the Plaintiffs." *Id.* GTL filed this timely appeal.

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332(d). We have jurisdiction to review the District Court's order denying GTL's motion to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 16(a)(1)(B). "We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010) (en banc).

III

---

[2] The Court granted the motion with respect to plaintiff Crystal Gibson, who opened her account online. Gibson was required to arbitrate her claims because she was presented with all the terms of use on the computer screen, including the arbitration provision, and provided her assent by clicking the "Accept" button.

The FAA requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. Thus, the first question is whether a valid arbitration agreement exists. *Id.* § 4. "Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). "[T]he FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

A

To determine whether a valid arbitration agreement exists, we "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the District Court held that New Jersey law governs the question of contract formation, and the parties have not challenged that determination.

Under New Jersey law, "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312–13 (N.J. 2014) (internal quotation marks and citation omitted), *cert. denied*, 135 S. Ct. 2804 (2015). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." *Id.* at 313. As the New Jersey Supreme Court explained, this principle is especially important in arbitration cases. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual

7

understanding of the ramifications of that assent." *Id.* (internal quotation marks and citation omitted).

To manifest assent, an offeree must provide "unqualified acceptance," which can be express or implied by conduct. *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (citing Restatement (Second) of Contracts § 19(1) (1981)). "Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offeror's expecting a reply and, therefore, assuming that silence indicates assent to the proposal." *Id.* Nevertheless, the offeror must "give[] the offeree reason to understand that assent may be manifested by silence or inaction." Restatement (Second) of Contracts § 69 (1981). New Jersey law also recognizes that contract terms may be incorporated by reference. "In order for there to be a proper and enforceable incorporation by reference of a separate document . . . the party to be bound by the terms must have had knowledge of and assented to the incorporated terms." *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009) (internal quotation marks and citation omitted).

B

The parties have not cited and we are unaware of any decisions that address the issue of contract formation through an interactive voice-response telephone system. In this case, GTL informed telephone users each time they set up or deposited funds in their accounts that its service was governed by terms of use available on its website. However, users were not required to visit the website or demonstrate acceptance of the terms of use through any affirmative act. Nor were they notified by the

8

automated telephone service that their use of GTL's service would constitute assent to the terms of use.

GTL argues that Appellees manifested assent by using its services after being repeatedly informed that their accounts were governed by its terms of use. In support of its argument, GTL relies on several cases finding assent to contract terms through use of a product or service. But in those cases, the purchasers manifested assent through the affirmative act of signing contracts that contained arbitration provisions. *See, e.g.*, *Raynor v. Verizon Wireless (VAW), LLC*, 2016 WL 1626020, at \*3–4 (D.N.J. Apr. 25, 2016) (enforcing arbitration agreement where customer physically signed agreement containing arbitration clause and activated cell phone service); *Curtis v. Cellco P'ship*, 992 A.2d 795, 797–800 (N.J. Super. Ct. App. Div. 2010) (enforcing arbitration agreement where customer electronically signed agreement containing arbitration clause before activating wireless phone service plan). Unlike those cases, Appellees here never signed anything when they opened their accounts or deposited money, let alone an agreement containing an arbitration provision.

GTL also relies on a number of cases in which consumers purchased goods or services online and were found to have assented to the terms and conditions available by hyperlink. *See, e.g.*, *Snap-on Bus. Sols. Inc. v. O'Neil & Assocs.*, 708 F. Supp. 2d 669, 683 (N.D. Ohio 2010); *PDC Labs. v. Hach Co.*, 2009 WL 2605270, at \*3 (C.D. Ill. Aug. 25, 2009); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121–22 (Ill. App. Ct. 2005). In each of those cases, the terms and conditions were immediately accessible to online users. By contrast, the transactions between GTL and Appellees occurred entirely through an automated telephone system, a medium that adverted to the terms of use

9

without stating them. To access the terms of use, Appellees would have needed to connect to the internet, visit GTL's website, and then click on a hyperlink. No Appellee took those extra steps.

GTL's reliance on *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), is likewise misplaced. There, the Supreme Court held that a forum-selection clause printed on a cruise ticket was valid and enforceable. *Id.* at 594–95. In contrast to this appeal, plaintiffs in *Carnival Cruise* received a copy of the contract with their tickets and conceded that they had notice of the forum-selection clause before contracting for passage. *Id.* at 590. Here, Appellees were never presented with the terms available on GTL's website and therefore were unaware of the arbitration provision contained therein.

GTL also relies on decisions enforcing contract terms that consumers do not receive until after completing their purchases. These are known as "shrinkwrap-license" cases because of the plastic that is used to seal products such as computer software. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121 & n.10 (2d Cir. 2012). In these cases, the license terms are typically provided inside the packaging, and consumers are deemed to accept those terms by opening or using the products. *Id.* at 122. Unlike this appeal, however, the consumers in the shrinkwrap-license cases received physical copies of the terms and conditions upon opening the products, and their subsequent use of the products manifested assent to the enclosed terms. *See, e.g.*, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (holding that terms inside a software box bind consumers who use the software after an opportunity to read the terms and reject them by returning the product).

C

This appeal presents an unusual hybrid of technology—offering services via one medium (an interactive telephone voice-response system) and purporting to bind users of those services to terms that are accessible only through a different medium (the internet). Because of the technology involved, particularly the internet, the District Court analogized GTL's method of notice and assent to that used in online "browsewrap" agreements. *See James*, 2016 WL 589676, at *5. In browsewrap agreements, a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen. Unlike online agreements where users must click on an acceptance after being presented with terms and conditions (known as "clickwrap" agreements), browsewrap agreements do not require users to expressly manifest assent. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016).

There is an evolving body of caselaw regarding whether the terms and conditions in browsewrap agreements are enforceable, often turning on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage. *See, e.g.*, *id.*; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30–32 (2d Cir. 2002); *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 218–20 (N.J. Super. Ct. App. Div. 2011). When terms are linked in obscure sections of a webpage that users are unlikely to see, courts have refused to find constructive notice. *See Nicosia*, 834 F.3d at 233; *Specht*, 306 F.3d at 30–32. On the other hand, "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable

11

to enforcing browsewrap agreements." *Nguyen*, 763 F.3d at 1177.

Here we need not consider the particular design and content of GTL's website because Appellees' transaction with GTL occurred over the telephone. They neither received GTL's terms of use, nor were they informed that merely using GTL's telephone service would constitute assent to those terms.[3] Under these circumstances, Appellees did not assent to the terms of use or the arbitration provision contained therein. *See, e.g.*, *Schnabel*, 697 F.3d at 127 (finding no assent where arbitration provision "was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of" the service). Accordingly, the District Court properly held that Appellees cannot be required to arbitrate their claims. *See Par-Knit Mills*, 636 F.2d at 54 ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").

---

[3] As GTL points out and the District Court recognized, the company's terms of use do state that using the telephone service would constitute acceptance of those terms. But those terms were neither conspicuous nor readily accessible by Appellees, and we cannot say that by their actions they manifested assent to terms contained on a website they never visited. *See Nguyen*, 763 F.3d at 1179 ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.").

\*　　\*　　\*

Congress has made clear that arbitration is an important federal policy and the Supreme Court has vindicated that policy many times. Yet it remains axiomatic that a party cannot be required to arbitrate without its assent. On the facts as pleaded in this case, Appellees did not, through their words or deeds, agree to arbitrate their dispute with GTL. For that reason, we will affirm the order of the District Court denying GTL's motion to compel arbitration.

13