**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3780
_____

ABIGAIL BACON; ARCADIA LEE; JEANNINE
DEVRIES; LISA GEARY;
RICHARD ALEXANDER; YVONNE WHEELER;
GEORGE DAVIDSON,
and on behalf of themselves and the putative class

v.

AVIS BUDGET GROUP, INC.;
PAYLESS CAR RENTAL, INC.,

Appellants
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-05939)
District Judge: Honorable Kevin McNulty
_____

Argued April 23, 2020
_____

Before: AMBRO, SHWARTZ, and BIBAS, <u>Circuit Judges</u>.

(Opinion Filed:  May 18, 2020)

_____

OPINION

_____

Jason E. Hazlewood
Kim M. Watterson [ARGUED]
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

M. Patrick Yingling
Reed Smith
10 South Wacker Drive
40th Floor
Chicago, IL 60606

      Counsel for Appellants

Lisa R. Considine
David J. DiSabato
The Wolf Law Firm
1520 U.S. Highway 130
Suite 101
North Brunswick, NJ 08902

Greg M. Kohn [ARGUED]
Nagel Rice
103 Eisenhower Parkway
Roseland, NJ 07068

2

Counsel for Appellees

SHWARTZ, <u>Circuit Judge</u>.

Plaintiffs Richard Alexander, Abigail Bacon, George Davidson, Jeannine DeVries, Lisa Geary, Yvonne Wheeler, and Arcadia Lee rented cars from Payless Car Rental, Inc., a subsidiary of Avis Budget Group, Inc. Plaintiffs, on behalf of a putative class, sued Defendants Payless and Avis for unauthorized charges. Defendants moved to compel Plaintiffs to arbitrate their claims. Because the District Court correctly denied their motions, we will affirm.

I

A

Plaintiffs rented cars in 2016. Six plaintiffs rented cars in the United States ("U.S. Plaintiffs"), and one rented a car in Costa Rica. At the Payless rental counter, the U.S. Plaintiffs each signed identical one-page rental agreements ("U.S. Agreement"), which, among other things, itemized charges and fees and showed whether the customer had accepted or declined certain products and services. Each U.S. Plaintiff affixed his or her signature below the final paragraph, which provides: "I agree the charges listed above are estimates and that I have reviewed&agreed to all notices&terms here and in the rental jacket." J.A. 631, 685, 720, 784, 842, 875.

After the U.S. Plaintiffs signed their agreements, the rental associate folded the agreement into thirds, placed it into what Defendants call a "rental jacket," and handed the jacket to the U.S. Plaintiffs. The rental jacket bears the title "Rental

3

Terms and Conditions" at the top of the front page, not the title "rental jacket," and contains thirty-one paragraphs. J.A. 220, 225. The word "jacket" appears in only the second paragraph, in the phrase "Rental Document Jacket." J.A. 220, 225. The twenty-eighth paragraph contains an arbitration provision, which provides that "all disputes . . . arising out of, relating to or in connection with [the] rental of a vehicle from Payless . . . shall be exclusively settled through binding arbitration." J.A. 223, 228 (emphasis omitted).

The rental jackets were kept at the rental counter, typically near the rental associate's computer terminal or printer. Payless rental associates are trained to give a rental jacket to each customer after the customer signs the U.S. Agreement and to any customer who requests one, but the associates are not trained to alert customers to the additional terms in the rental jacket. The rental associates said nothing about the rental jacket when the U.S. Plaintiffs reviewed their agreements.

Lee rented a car in Costa Rica from a licensee of Payless. The licensee uses a two-sided single page document for its rentals ("Costa Rica Agreement"). The front side contains the details of the transaction. The back side is titled "Rental Agreement" and includes pre-printed terms in English and Spanish. J.A. 204. The back side also includes a "Dispute resolution" clause, which requires that disputes related to the agreement be arbitrated. J.A. 204.

The front and back sides both have signature lines. On the front side, just before the signature line, the Costa Rica Agreement states: "By signing below, you agree to the terms and conditions of this Agreement, and you acknowledge that

you have been given an opportunity to read this Agreement before being asked to sign." J.A. 203. The back side has a separate signature line at the bottom-right corner, preceded by the statement in English and Spanish: "By signing below, you agree to the terms and conditions of this Agreement." J.A. 204. Lee signed the front side of the Costa Rica Agreement but did not sign the back side. A video of Lee's rental transaction shows the rental associate instructing Lee to initial and sign on the front side of the Costa Rica Agreement but does not show the associate informing Lee about the back side. In addition, the video does not show that Lee turned the document over.

Five of the U.S. Plaintiffs used websites—Expedia.com, Hotwire.com, or Priceline.com—to reserve their Payless car rentals. Each of the websites' terms of use included an arbitration provision.

B

Plaintiffs brought a putative class action against Defendants, alleging violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq., the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903 et seq., the Nevada Statutory Consumer Fraud Act, Nev. Rev. Stat. § 41.600 et seq., and for common law unjust enrichment and conversion. Plaintiffs allege that Defendants charged them for products and services that they either had not authorized or had declined.

In response, Defendants moved to compel arbitration and to dismiss or stay the action pending arbitration pursuant to the Federal Arbitration Act ("FAA"). The District Court

5

denied the motions and directed the parties to engage in discovery on arbitrability. It said that it would "accept one joint motion from [D]efendants for partial summary judgment on the motion to compel arbitration," and that Plaintiffs could then cross-move for summary judgment on arbitrability. Bacon v. Avis Budget Grp., Inc., Civ. No. 16-5939 (KM) (JBC), 2017 WL 2525009, at *16 (D.N.J. June 9, 2017) (emphasis omitted). Following targeted discovery, Defendants filed a new joint motion, styled as a "Motion for Summary Judgment to Compel Arbitration." ECF No. 81 at 1. In that motion, they "renew[ed] their request that [the] Court enforce the arbitration provisions in Plaintiffs' rental contracts and compel bilateral arbitration . . . consistent with the" FAA. ECF No. 81-1 at 8. Plaintiffs cross-moved for summary judgment on the arbitration issue, arguing that the undisputed facts showed that they had never agreed to arbitrate.

The District Court denied Defendants' motion and granted in part Plaintiffs' motion. Bacon v. Avis Budget Grp., Inc., 357 F. Supp. 3d 401, 432 (D.N.J. 2018). As to the U.S. Agreements, the Court denied Defendants' motion and granted Plaintiffs' motion on the ground that the undisputed facts showed that the U.S. Plaintiffs did not assent to the arbitration provision. Id. at 418-26. As to the Costa Rica Agreement, the Court denied both parties' motions because a disputed factual issue existed as to whether Lee was on reasonable notice of the arbitration provision. Id. at 426-29. As to the motions based on the website terms, the Court held that the record was not sufficiently developed concerning assent and that the issue could be resolved after further discovery either via summary judgment or at trial. Id. at 429-32. Defendants appeal.

6

## II[1]

Before turning to the merits of this appeal, we must determine whether we have appellate jurisdiction. The order here addressed three items: (1) the request to compel the U.S. Plaintiffs to arbitrate their dispute; (2) the request to compel Lee to arbitrate her dispute; and (3) the request to compel arbitration pursuant to the arbitration clauses in the websites Plaintiffs used to make their reservations. The parties agree, correctly, that we have appellate jurisdiction over the order denying the request to compel the U.S. Plaintiffs to arbitrate. 9 U.S.C. § 16. The parties disagree, however, about whether we have jurisdiction over the other two aspects of the order. For the reasons set forth below, we have jurisdiction over those items, too.

Generally, the Courts of Appeals have jurisdiction over only the "final decisions" of district courts, 28 U.S.C. § 1291, which are decisions that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment," Weber v. McGrogan, 939 F.3d 232, 236 (3d Cir. 2019) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). The FAA sets forth an exception to the final decision rule in 28 U.S.C. § 1291, providing that an "appeal may be taken from . . . an order . . . refusing a stay of any action under [§] 3 of" the FAA, "denying a petition under [§] 4 of [the FAA] to order arbitration to proceed," or "denying an application under

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

7

[§] 206 of [the FAA] to compel arbitration."   9 U.S.C. § 16(a)(1)(A)-(C).

Thus, whether § 16(a) gives us jurisdiction over the District Court's order hinges on whether the order involves a § 3 motion for a stay or a § 4 or § 206 petition or motion to compel arbitration.[2]   9 U.S.C. § 16.   As a result, we first

---

[2] While Defendants relied on only 9 U.S.C. §§ 3 and 4 in their motions, they initially sought to compel arbitration of the Costa Rica Agreement in Costa Rica, so to the extent the Costa Rica Agreement can be read as requiring arbitration to take place in Costa Rica, the District Court's authority to compel arbitration as to that agreement would derive from 9 U.S.C. § 206.  See Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), 687 F.3d 163, 171 n.6 (3d Cir. 2012) ("A district court's primary authority to compel arbitration in the international context comes from 9 U.S.C. § 206, rather than from 9 U.S.C. § 4.").  Thus, we construe the Court's order as resolving the arbitration demand involving the U.S. Plaintiffs under § 4 and the demand involving the Costa Rica Agreement under § 206.  In any event, "[u]nder § 208, the requirements of § 4 apply to § 206 applications as well, provided there is no conflict between the two provisions." Devon Robotics, LLC v. DeViedma, 798 F.3d 136, 144 n.8 (3d Cir. 2015).  While § 4 "accrues only when the respondent unequivocally refuses to arbitrate," Control Screening LLC, 687 F.3d at 171 n.6 (quoting PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995)), and this requirement has never been applied to § 206, this distinction has no impact here because all Plaintiffs unequivocally refused to arbitrate by

8

examine whether the order denied a motion to compel arbitration (as opposed to a ruling beyond compelling arbitration, such as an adjudication on the merits of the dispute). Devon Robotics, LLC v. DeViedma, 798 F.3d 136, 146-47 (3d Cir. 2015). If we conclude that the order denied a motion to compel arbitration, then we will exercise jurisdiction even if that order is not final. Sandvik A.B. v. Advent Int'l Corp., 220 F.3d 99, 102-03 (3d Cir. 2000).

To determine whether a district court was presented with a motion to compel arbitration, we examine (1) "the caption and relief requested in the underlying motion" and (2) "the label and the operative terms of the district court's order." Devon, 798 F.3d at 146-47. "[L]ook[ing] beyond the caption itself . . . ensure[s] that a true motion to compel is not overlooked and . . . that parties cannot game the captions of their motions in an effort to gain an interlocutory appeal where none is warranted." Id. at 146 (internal quotation marks and citation omitted).[3]

---

filing their class-action complaint. See PaineWebber Inc., 61 F.3d at 1068.

[3] In Devon, we declined to extend § 16 to all motions for summary judgment, explaining that the FAA "provides no support for exercising jurisdiction over an order denying a motion for summary judgment," and "Congress's enumeration of several categories of appealable orders, but not orders denying summary judgment, indicates that Congress intended orders denying summary judgment to fall outside the scope of § 16." 798 F.3d at 142-43. Thus, we must take care not to blindly equate a denial of summary judgment with a denial of a motion to compel under § 16 because "a party trying to

Here, the events leading to the filing of the motion, its title, and the substance of the District Court's order all show that the motion sought an order compelling arbitration, which is appealable under § 16(a). First, the procedural history of this case shows that Defendants did not "game the caption[] of their motion[] in an effort to gain an interlocutory appeal where none is warranted." Id. Defendants first moved to compel arbitration and dismiss the complaint or stay the action pending arbitration under the FAA. The District Court denied the motions, directed the parties to engage in discovery on arbitrability, and instructed that they could then file renewed motions, to be decided under a summary judgment standard. After discovery, Defendants filed a "Motion for Summary Judgment to Compel Arbitration." ECF No. 81 at 1. This label reflected compliance with the Court's directive to file a joint motion for summary judgment. Furthermore, in their summary judgment brief, Defendants stated: "Defendants renew their request that this Court enforce the arbitration provisions in Plaintiffs' rental contracts and compel bilateral arbitration," under the FAA and "the United States Supreme Court's mandate that arbitration agreements be strictly enforced." ECF No. 81-1 at 8. Thus, the relief sought was to compel arbitration.[4]

---

enforce an arbitration agreement but seeking to avoid trial on the issue of arbitrability could file a motion for summary judgment instead of a § 4 petition . . . and then seek immediate review if the motion is denied." Id. at 144.

[4] The motion also mirrored the procedural requirements of § 4. Under § 4, a party's ability to petition for an order directing arbitration to proceed is premised on the opposing party's "alleged failure, neglect, or refusal . . . to arbitrate," and

10

Second, the District Court acknowledged that Defendants sought as relief an order to compel arbitration by stating that "[D]efendants' motion for summary judgment to compel arbitration (DE 81) is DENIED as presented." Bacon, 2017 WL 2525009, at *16; see also J.A. 4; cf. Devon, 798 F.3d at 147-48 (concluding that motion was not one to compel arbitration where order denied summary judgment on the merits). Accordingly, the language and substance of Defendants' motion and the Court's order show that Defendants sought an order compelling arbitration, and the Court denied that request. Because the plain text of § 16(a) reaches an order refusing to compel arbitration, we have jurisdiction over this order.

---

that the party serve the opposing party with "[f]ive days' notice in writing" of the petition. § 4. First, Plaintiffs unequivocally refused to arbitrate by filing their class-action complaint. See PaineWebber Inc., 61 F.3d at 1068. Second, Plaintiffs were on notice that Defendants sought arbitration over litigation. Defendants moved to compel arbitration—and the District Court ordered the parties to engage in targeted discovery on arbitrability and to renew their motions—more than one year before Defendants filed the instant motions. See Guidotti, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard."); Kirleis v. Dickie, McCamey, & Chilcote, P.C., 560 F.3d 156, 158-59 (3d Cir. 2009) (analyzing § 4 motion to compel arbitration in response to a complaint). Furthermore, "no one was 'prejudicially misled' in this case by [Defendants'] styling of [their] motion as a motion for summary judgment rather than a motion to compel." Devon, 798 F.3d at 148.

11

To be sure, two aspects of the District Court's order were not final as more work must be done in the District Court. First, the Court declined to compel Lee to arbitrate in Costa Rica because there was a disputed issue of fact and hence the issue of arbitrability will proceed to trial. Second, the Court declined to rule on whether Plaintiffs assented to the websites' arbitration clauses because it needed additional evidence. That latter motion was essentially denied without prejudice subject to additional discovery.

Both orders, however, denied motions to compel arbitration, and we may exercise appellate jurisdiction over them regardless of finality. See Sandvik, 220 F.3d at 103. The FAA "makes no distinction between orders denying arbitration and 'final orders' that accomplish the same end." Id. at 102. We have jurisdiction over orders refusing to compel arbitration "irrespective of the fact that the [motion] was denied without prejudice," Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012), as well as orders entered where the "district court does not feel itself ready to make a definitive decision on whether to order arbitration and therefore denies a motion to compel," Sandvik, 220 F.3d at 103. Thus, we may exercise appellate jurisdiction over all three issues raised in this appeal.

III[5]

Having determined that we have appellate jurisdiction, we turn to the merits. The FAA, 9 U.S.C. §§ 1-16, embodies

---

[5] "We exercise plenary review over questions regarding the validity and enforceability of an agreement to

12

the "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). The FAA requires courts to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement. 9 U.S.C. §§ 3, 4; see also § 206.

Before compelling a party to arbitrate under the FAA, we must consider two "gateway" questions, one of which is "whether the parties have a valid arbitration agreement."[6]

arbitrate," Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 177 (3d Cir. 2010), and "we may affirm on any grounds supported by the record," MacDonald v. Cashcall, Inc., 883 F.3d 220, 225 (3d Cir. 2018) (quoting Hassen v. Gov't of V.I., 861 F.3d 108, 114 (3d Cir. 2017)).

When presented with a motion to compel arbitration based on an evidentiary record, courts apply the summary judgment standard under Federal Rule of Civil Procedure 56(a) "because the district court's order . . . is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" Jaludi v. Citigroup, 933 F.3d 246, 251 n.7 (3d Cir. 2019) (omission in original) (quoting White v. Sunoco, Inc., 870 F.3d 257, 262 (3d Cir. 2017)). A "district court should only grant a motion to compel arbitration 'if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law.'" Id. (quoting White, 870 F.3d at 262).

[6] The second issue is whether the dispute is covered by the arbitration clause. Lamps Plus, 139 S. Ct. 1416-17. This issue is not implicated in this appeal.

Lamps Plus, Inc. v. Varela, 139 S. Ct. 1407, 1416 (2019) (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion)). One component of a valid arbitration agreement is that the parties agreed to arbitrate. To determine this, we apply state-law principles of contract formation. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

The parties do not dispute that New Jersey law governs the question of contract formation for both the U.S. Agreements signed by Alexander, Bacon, Davidson, and DeVries, and the Costa Rica Agreement signed by Lee, nor do they dispute that Florida law governs the question of contract formation for the U.S. Agreements signed by Geary and Wheeler.

Defendants assert that valid agreements existed and that the District Court erred in refusing to compel arbitration based on all the agreements. First, Defendants argue that the rental jacket containing the arbitration provision was incorporated into the U.S. Agreements under New Jersey and Florida law. Second, they contend that Lee signed the Costa Rica Agreement and had reasonable notice of the arbitration provision on the back side. Third, Defendants argue that Plaintiffs who booked online agreed to each website's terms of use and arbitration provision, and that the Court erred in excluding evidence on which Defendants relied concerning these websites. Their arguments fail.

A

The District Court properly held that the rental jackets were not adequately incorporated into the U.S. Agreements

and thus that the U.S. Plaintiffs did not assent to the arbitration provision in the rental jackets.

1

Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." Morgan v. Sanford Brown Inst., 137 A.3d 1168, 1180 (N.J. 2016). New Jersey law permits contract terms to be incorporated by reference. "[F]or there to be a proper and enforceable incorporation by reference of a separate document," (1) the separate document "must be described in such terms that its identity may be ascertained beyond doubt" and (2) "the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'" Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009) (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:25 (4th ed. 1999)).

The U.S. Agreement does not incorporate the rental jacket beyond doubt and thus does not bind Plaintiffs Alexander, Bacon, Davidson, and DeVries to the arbitration provision contained within the jacket. First, the U.S. Agreement does not describe the rental jacket "in such terms that its identity may be ascertained beyond doubt." Quinn, 983 A.2d at 617. The final paragraph of the U.S. Agreement provides that the customer "reviewed&agreed to all notices&terms here and in the rental jacket," J.A. 631, 720, 784, 842, but the phrase "rental jacket" is not defined or even used in the U.S. Agreement and is not otherwise so "specific or identifiable" that the customer could ascertain the document

15

to which the phrase refers, Quinn, 983 A.2d at 618 (holding that a retainer agreement stating only that the client would be bound "by our standard billing practices and firm policies" did not incorporate the master retainer because the purportedly incorporating agreement provided no way to identify the purportedly incorporated agreement, such as by document date or publication number). In fact, the rental jacket itself is labeled "Rental Terms and Conditions" rather than "rental jacket." J.A. 220, 225. Thus, the U.S. Agreement does not sufficiently describe the rental jacket to incorporate it by reference.

Second, there is no evidence that Plaintiffs knew about the arbitration provision in the rental jacket when they signed the U.S. Agreement. Indeed, "it is without dispute that [Plaintiffs] were not shown and did not see [the rental jacket]," Quinn, 983 A.2d at 619, until after they had signed the U.S. Agreement and that the rental associates did not discuss any terms contained in the rental jacket at any time.

While there is no obligation to provide a copy of a clearly identified incorporated agreement at the time the agreement itself is signed, the incorporated document must be identified beyond doubt. Here, the incorporated agreement is not so identified. Furthermore, Defendants' contention that the rental jacket was readily available to Plaintiffs is belied by the undisputed facts. The rental jackets sat behind the rental counter where the associate worked and hence not in an area that a reasonable customer would think he had access. Moreover, there is no evidence to indicate that Plaintiffs were directed to the jacket that Defendants assert was incorporated into the U.S. Agreement or were on "reasonable notice" of its terms when they signed the U.S. Agreement. Hoffman v.

16

Supplements Togo Mgmt., LLC, 18 A.3d 210, 217 (N.J. Super. Ct. App. Div. 2011) (holding that a party may be bound if it has "reasonable notice" of the contract terms (quoting Caspi v. Microsoft Network, L.L.C., 732 A.2d 528, 532 (N.J. Super. Ct. App. Div. 1999))). "[A] party cannot be required to arbitrate without its assent," James v. Glob. TelLink Corp., 852 F.3d 262, 268 (3d Cir. 2017), and a party cannot assent to something he does not know exists. Because the U.S. Agreement did not describe the rental jacket "in such terms that its identity [could] be ascertained beyond doubt" and Plaintiffs did not have "knowledge of and assent[] to" the rental jacket terms when they signed the U.S. Agreements, Quinn, 983 A.2d at 617, the District Court properly held that Plaintiffs whose agreements are subject to New Jersey law could not be compelled to arbitrate.

2

We reach the same conclusion for Plaintiffs subject to Florida law. Under that law, "where a writing expressly refers to and sufficiently describes another document, that other document . . . is to be interpreted as part of the writing." OBS Co. v. Pace Constr. Corp., 558 So. 2d 404, 406 (Fla. 1990). "Incorporation by reference, however, requires more than simply making reference to another document in a contract." Jenkins v. Eckerd Corp., 913 So. 2d 43, 51 (Fl. Dist. Ct. App. 2005). Instead, "[t]o incorporate by reference a collateral document, the incorporating document must (1) specifically provide that it is subject to the incorporated collateral document and (2) the collateral document to be incorporated must be 'sufficiently described or referred to in the incorporating agreement' so that the intent of the parties may be ascertained." BGT Grp., Inc. v. Tradewinds Engine Servs.,

17

LLC, 62 So. 3d 1192, 1194 (Fla. Dist. Ct. App. 2011) (alteration, internal quotation marks, and citation omitted).

Although Florida law applies a more lenient test for incorporation than New Jersey law, the rental jacket was nonetheless not "sufficiently described" to meet Florida's requirement to be deemed incorporated into the U.S. Agreement. As noted above, the rental jacket is labelled "Rental Terms and Conditions" rather than "rental jacket." See BGT Grp., 62 So. 3d at 1194-95 (holding a quote for sale of turbine parts did "not sufficiently describe" terms in a purportedly incorporated document because the incorporating document did not provide a specific description of them or attach them to the quote, and thus "it cannot objectively be said that [the party] agreed to be bound"). The U.S. Agreement also lacked any description of where the rental jacket could be found or what the rental jacket was. Cf. Avatar Props., Inc. v. Greetham, 27 So. 3d 764, 766 (Fla. Dist. Ct. App. 2010) (holding an agreement incorporated the arbitration clause in the home warranty document where the incorporating agreement stated that the warranty was available at the defendant's office); Kaye v. Macari Bldg. & Design, Inc., 967 So. 2d 1112, 1114 (Fla. Dist. Ct. App. 2007) (holding a contract incorporated an arbitration provision where the incorporating document listed the incorporated document and the document number). Finally, the rental associate did not provide the rental jacket to Plaintiffs before they signed the U.S. Agreement, see Spicer v. Tenet Fla. Physician Servs., LLC, 149 So. 3d 163, 167-68 (Fla. Dist. Ct. App. 2014) (holding a document with arbitration clause was not incorporated because the incorporating agreement did not describe, cite, or name the location of the purportedly incorporated document until after plaintiff signed the

agreement), nor was it in a location that a customer would view as accessible. Thus, the District Court properly held that Plaintiffs subject to Florida law did not objectively agree to be bound by the arbitration provision in the rental jacket.[7]

B

We next address whether Lee agreed to arbitrate her claims based on the Costa Rica Agreement. Unlike Plaintiffs who received rental jackets after they signed the U.S. Agreement, Lee received a single-page, two-sided document at the outset of the transaction and was asked only to review and sign the front side. The back side had a separate unsigned signature line and an arbitration clause.

Under New Jersey law, to be binding, a contract term must have "been mutually agreed upon by the parties," Hoffman, 18 A.3d at 216, and each party must have "reasonable notice" of the contract term, id. at 217 (quoting Caspi, 732 A.2d at 532).

The District Court correctly concluded that a genuine dispute exists over whether Lee was on reasonable notice of the arbitration provision on the back side of the Costa Rica Agreement. The front side of the Costa Rica Agreement contains the following language immediately above the

---

[7] Defendants contend that several district courts have held on nearly identical facts that a rental jacket is incorporated into a rental car agreement. These decisions are inapposite, however, because they either arise under a different state's contract law or involve agreements that described the jacket more specifically than in this case.

19

signature line: "By signing below, you agree to the terms and conditions of this Agreement, and you acknowledge that you have been given an opportunity to read this Agreement before being asked to sign." J.A. 203. This language does not direct the customer to the back side or inform him of its terms. See Rockel v. Cherry Hill Dodge, 847 A.2d 621, 627 (N.J. Super. Ct. App. Div. 2004) (declining to compel arbitration where the arbitration provision was in small print on the back side of a document that only cautioned "in slightly larger print on the front, that 'important arbitration disclosures' appear on the reverse side"). Construing the facts in a light most favorable to Lee, this statement, and the lack of reference to the back side, imply that the "Agreement" consists of the text only on the front side. Thus, the evidence does not undisputedly show that Lee had "reasonable notice" of the arbitration agreement on the back side of the Costa Rica Agreement.

Furthermore, as the District Court correctly concluded, the parties dispute whether the rental associate showed Lee the Costa Rica Agreement in a way that would have revealed that there was writing on the back side. Based on the video, Defendants contend that the rental associate "told Lee that he would give her a copy of the [Costa Rica Agreement] and then showed her the two-sided agreement as he put it into a folder and handed it to her." J.A. 1374 ¶ 209. Notably, this would have occurred after she signed the front side of the agreement. Moreover, the video does not depict the associate presenting Lee the back side of the document as he did with the front side, nor did she sign the back side. In fact, the video does not depict the associate instructing Lee to sign the back of the document as he did with the front side. Furthermore, Lee asserts that the associate did not explain the terms and conditions paragraph of

20

the Costa Rica Agreement, advise her that it contained an arbitration provision, or direct her to the back side of the Costa Rica Agreement. Based upon this evidence, a reasonable juror might find that Lee acted in reliance on the representations of the sales associate, which pointed her only to the terms on the front side.

Because there are genuine disputes of fact concerning whether Lee had reasonable notice of the back side of the Costa Rica Agreement and its arbitration provision, the motion for summary judgment to compel arbitration was properly denied.

C

The District Court also correctly rejected Defendants' assertion that they provided copies of the website screenshots that embody the layouts and the terms of the website agreements Plaintiffs viewed when they made their rental reservations. Because the Court lacked authenticated evidence that would establish Plaintiffs' assent to the terms in the screenshots Defendants offered, it correctly declined to decide whether the websites bound Plaintiffs to arbitrate.[8]

---

[8] Plaintiffs argue that Defendants waived the opportunity to compel arbitration based on the websites' terms because they did not include this ground in their initial motions to compel arbitration. We will not enforce the waiver here. Defendants relied on the website terms in their motion for summary judgment and Plaintiffs did not present the waiver argument in their opposition to Defendants' joint motion for summary judgment to compel arbitration. As a result, they have waived any waiver argument on appeal. See Freeman v.

21

Facts supporting summary judgment must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "We review a district court's determinations concerning the admissibility of evidence for an abuse of discretion." <u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247, 265 (3d Cir. 2014).

Authenticating evidence under Federal Rule of Evidence 901 may be satisfied by testimony of a witness with personal knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1); <u>United States v. Bansal</u>, 663 F.3d 634, 667 (3d Cir. 2011). Defendants offered the Certification of Matthew Enderle, Avis Online Travel Account Manager, to authenticate website screenshots. His certification provides that he is "generally familiar with the terms and conditions on Expedia.com, Hotwire.com, and Priceline.com, which [he] review[s] and reference[s] from time to time as part of [his] job, including during the spring and summer of 2016." J.A. 232. Attached to the certification are screenshots of the process for booking a rental through Expedia.com, Hotwire.com, and Priceline.com, taken in December 2017. Thus, the 2017 screenshots Enderle presented captured images of websites as they existed not in 2016, when Plaintiffs made their reservations, but rather as they were some eighteen months later.

---

<u>Pittsburgh Glass Works, LLC</u>, 709 F.3d 240, 250 (3d Cir. 2013) (holding that defendant waived its waiver argument on appeal where it never presented the argument to the district court). Accordingly, the District Court correctly considered whether those Plaintiffs agreed to arbitrate when booking on the websites.

22

As the District Court correctly observed, Enderle did not have "direct knowledge" about how the websites appeared when Plaintiffs accessed them in 2016. His lack of direct knowledge is no surprise. Enderle is an Avis employee, and he provided only his views about websites that "were created and maintained" by companies other than Avis without explaining how he had personal knowledge that the website screen shots he presented were accurate depictions of the websites Plaintiff saw. See Thompson v. Bank of Am. Nat'l Ass'n, 783 F.3d 1022, 1027 (5th Cir. 2015) (holding at summary judgment that witness affidavits did not authenticate an online log because the affidavits did not "say that [the witnesses] have personal knowledge of the online log or that it represents an unaltered version of the website . . . likely because . . . th[e] log[] w[as] created and maintained by" a third party rather than by the witnesses). Because Enderle's affidavit lacked the personal knowledge required for affidavits "used to support or oppose a [summary judgment] motion," Fed. R. Civ. P. 56(c)(4), and he did not present the screenshots that Plaintiffs accessed in 2016 or state that the screenshots he produced were accurate copies of the websites as they existed on the date Plaintiffs made their on-line reservations, the District Court did not abuse its discretion in excluding this evidence.

Because Defendants failed to produce admissible evidence concerning the layouts or contents of the websites Plaintiffs accessed, the District Court had no basis to determine whether Plaintiffs had assented to the websites' terms. See James, 852 F.3d at 267 (acknowledging that whether online terms are enforceable "often turn[s] on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage" and where "terms are linked in obscure

23

sections of a webpage . . . courts have refused to find constructive notice"). "[T]he language of the FAA affirmatively requires the court to be 'satisfied' that the arbitration agreement's existence is not at issue," Sandvik, 220 F.3d at 109, and the record at this stage does not provide a basis to be so satisfied regarding the websites' arbitration clauses. As a result, the District Court had good grounds for refusing to order arbitration on the evidentiary record it had.[9]

III

For these reasons, we will affirm.

---

[9] We will not consider Plaintiffs' argument that the District Court erred in permitting Defendants to conduct additional discovery about online assent. Plaintiffs' argument seeks to attack a judicial decree "with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." Jennings v. Stephens, 135 S. Ct. 793, 798 (2015) (citation omitted). Such an attack can only be pursued in a cross appeal. Moreover, while Plaintiffs attempted to cross-appeal this order, Appellate No. 19-1065, the cross-appeal was properly dismissed because it was predicated on a non-appealable interlocutory discovery order. See Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1116 (3d Cir. 1986) ("Discovery orders, being interlocutory, are not normally appealable."). Thus, for these reasons, Plaintiffs are not entitled to review of the discovery order as part of this appeal.