# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH ANTOGNOLI, III, as )
Personal Representative of the Estate of )
KATHLEEN D. ANTOGNOLI, )
            )
          Plaintiff, )
            )      **C.A. No.: N21C-01-139 FJJ**
      v. )
            )
CHRISTIANA CARE HEALTH )
SERVICES, INC. a Delaware corporation )
And MANOR CARE- PIKE CREEK OF )
WILMINGTON, DE LLC, a Delaware )
Limited Liability Company, individually )
and d/b/a Manor Care Health Care )
Services – Wilmington, )
            )
          Defendants. )

Submitted: August 15, 2023
Decided: August 22, 2023

## OPINION AND ORDER

*On Defendant, Manor Care – Pike Creek Of Wilmington, DE, LLC's Motion To Dismiss In Favor Of Arbitration*

## GRANTED in part / DENIED in part

*Gary S. Nitsche, Esquire and Rachel D. Allen, Esquire,* Nitsche & Fredericks, LLC, Wilmington, Delaware, Attorneys for Plaintiff.

*Emily Silverstein, Esquire,* Balaguer, Milewski & Imbrogno, Wilmington, Delaware, Attorney for Defendant Christiana Care Health Services, Inc.

*Geoffrey Grivner, Esquire,* Buchanan, Ingersoll & Rooney, P.C., Wilmington, Delaware, Attorney for Defendant ManorCare Health Services, Inc.

**Jones, J.**

# INTRODUCTION

On November 7, 2018 Kathleen Antognoli ("Kathleen") was admitted to Christiana Care Hospital ("Christiana Care") for treatment of injuries sustained in a motor vehicle accident. She was discharged on November 18, 2018 to Bryn Mawr Rehabilitation Hospital. At a later date, she was admitted to Paoli Hospital in Pennsylvania. On or about December 20, 2018, Kathleen was transferred from Paoli Hospital to Defendant Manor Care-Pike Creek of Wilmington, Delaware, LLC's Facility at Pike Creek ("Manor Care"). Kathleen remained at the Pike Creek facility until January 11, 2019.

Kathleen died on November 20, 2019. The personal representative of Kathleen's estate is Joseph Antognoli, III ("Joseph"). Joseph has filed a survivor claim on behalf of Kathleen's estate against Christiana Care and Manor Care. The complaint against the defendants is based on medical malpractice. Each of the Defendants have answered the complaint and filed a cross claim for contribution and indemnity against the other.

Manor Care has moved to dismiss all claims against it, arguing that the Court lacks subject matter jurisdiction because the matter is subject to binding arbitration pursuant to an Agreement signed by Kathleen. Both plaintiff and Christiana Care oppose Manor Care's Motion. For the reasons stated herein, Manor Care's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**STANDARD OF REVIEW**

Manor Care moves to dismiss based on Superior Court Civil Rule 12(b)(1), claiming that the Court lacks subject matter jurisdiction over the claims in the Complaint. It is well-settled in Delaware that the power to compel arbitration lies exclusively with the Court of Chancery.[1] This Court has held, however, that is has jurisdiction to determine whether a valid and enforceable arbitration agreement exists for purposes of determining whether it has subject matter jurisdiction.[2] In reviewing such a motion, the Court may consider matters outside the pleadings, such as testimony and affidavits.[3]

On a Motion to Dismiss under Rule 12(b)(1), the Court must accept every well-pled allegation as true and draw all reasonable inferences in the non-movant's favor.[4] A Motion to Dismiss should be denied unless it appears to a "reasonable certainty" that the plaintiff would not be entitled to relief under any set of facts that could be proved to support them.[5]

---

[1] 10 *Del. C.* §5701.
[2] *Jones v. 810 Broom Street Operations, LLC*, 2014 WL 1347746, at *1 (Del. Super. April 7, 2014); *see also Aquila of Delaware, Inc. v. Wilmington Trust Company*, 2011 WL 4908406, at *1 (Del. Super. Oct. 10, 2011).
[3] *Cecilia Abernathy, et al. v. Brandywine Urology Consultants, P.A.,* 2021 WL 211144, at *1 (Del. Super. Jan. 21, 2021).
[4] *Donald H. Loudon, Jr., v. Archer-Daniels-Midland Co., et al.,* 700 A.2d 135, 140 (Del. 1997).
[5] *Id.*

## DISCUSSION

At the time of her admission to Manor Care, Kathleen executed a number of documents including a Voluntary Arbitration Agreement (the "Agreement"). The Agreement provided in relevant part:

> **Voluntary Agreement to Arbitrate Disputes**. The parties agree that they will mutually benefit from the speedy and efficient resolution of any dispute or controversy which may arise between them. This is a voluntary agreement to have all disputes resolved through binding arbitration by an independent neutral Arbitrator who will be selected by the parties as specified in this Agreement. **THE PARTIES AGREE THAT THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. ANY DISPUTES BETWEEN THE PARTIES WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION.**

In determining whether a claim is "properly committed to arbitration" for purposes of ascertaining subject matter jurisdiction, this Court engages in a two-part analysis.[6] The Court must determine:

1. Whether a valid binding arbitration agreement exists; and
2. Whether the scope of the agreement covers all of the parties claims.[7]

"A party seeking to enforce an arbitration agreement has the initial burden of establishing the existence of a valid agreement to arbitrate."[8] In determining whether

---

[6] Manor Care maintains that the governing law is the Federal Arbitration Act ("FAA") per the parties contract. Parties are free to select a choice of law provision and the Court will honor that request in this case. I note that the analysis is the same under the FAA as it would be under state law.

[7] *Bacon v. Avis Budget Crp., Inc.,* 959 F.3d 590, 599 (3d. Cir. 2020).

[8] *Skinner v. Peninsula Healthcare Services, LLC*, 2021 WL 778324, at *3 (Del. Super. Mar. 1, 2021).

4

an agreement to arbitrate exists, ordinary state-law contract principles apply.[9] Under Delaware law, contract formation requires mutual assent, meaning a complete meeting of the minds of the parties.[10] Whether the parties mutually assented should be determined objectively, based on overt manifestations of assent rather than subjective intent.[11] No agreement to arbitrate exists unless there is a clear expression of such an intent.[12]

Applying the principles described above, it is clear that the parties intended any claim belonging to Kathleen as to Manor Care be subject to binding arbitration. Is it not disputed that Kathleen signed the Agreement. The Agreement provides in clear language that the parties "are waiving the right to trial by jury" and "any disputes between the parties will be resolved exclusively through binding arbitration." Moreover, Plaintiff's claims unambiguously fall within the scope of the Agreement. The Agreement provided that "any disputes between [them] will be resolved exclusively through binding arbitration including any claim … asserted by or on behalf of [MCHS] or [Ms. Antognoli]" and, specifically, any claim of liability "for any actions or inactions … related to any care provided." In short, there is a

---

[9] *Id.*

[10] *United Health Alliance, LLC v. United Medical, LLC,* 2013 WL 6383026, at *6 (Del. Ch. Nov. 27, 2013).

[11] *Id.*

[12] *Id.*; *see also Behm v. Am. In't Grp. Inc*., 2013 WL 3981663, at *6 (Del. Super. July 30, 2013).

valid binding arbitration agreement and the scope of that agreement covers all of the claims between Plaintiff and Manor Care.[13]

This now brings the Court to the issue of the cross claims between Manor Care and Christiana Care and what effect the binding arbitration provision has on the prosecution of these claims, which were made before the instant motion to dismiss was filed. Manor Care maintains that since it is no longer a party, the cross claim does not survive under Superior Court Rule 13(g) because cross-claims can only be maintained by parties. Alternatively, Manor Care maintains that the cross claim should be dismissed because there is no viable claim for indemnification and/or contribution because the complaint references separate and subsequent acts of negligence and different harm which would preclude a claim seeking indemnification. Christiana Care maintains that its cross claim survives. It argues that it is properly pled, and as a nonparty to the arbitration agreement, it cannot be compelled to arbitrate the matter and it is entitled to present its cross claim to a jury.

---

[13] Plaintiff maintains that Manor Care has not proven that Kathleen was competent to sign the arbitration agreement. The competency of a party to sign a contract is not part of proof of the contract but is a defense to contract formation. *See Tel. & Data Sys., Inc. v. Eastex Cellular L.P.*, 1993 WL 344770, at *9 (Del. Ch. Aug. 27, 1993) ("In determining whether a party assented to the terms of an agreement, [the Court] must rely on objective standards of what was said and done and not on an alleged state of mind."). The burden of proof on competency rests not with Manor Care, but with the plaintiff. *See also Bettis v. Premier Pool & Property Management, LLC*, 2012 WL 4662225, at *2 (Del. Ch. Sept. 26, 2012) ("Under Delaware law, adults are presumed to have contractual capacity and the burden of proving otherwise rests with the party alleging incapacity." (internal quotes and citations omitted)). No defense on the basis of competency has been raised in the pleadings, nor has any other evidence been forthcoming that suggests a competency issue on the part of Kathleen. Therefore, the competency of Kathleen is not an issue.

Like its federal counterpart, Superior Court Civil Rule 13(g) allows a party to file cross claims against "co-parties."[14] In this regard, courts have held that "[a] cross-claim cannot be asserted against a party who was dismissed from the action previous to the assertion of the cross-claim."[15] That said, "dismissal of the original complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a co-defendant."[16] In other words, where a crossclaim is properly filed against a co-party, "[it] [will] not cease to be so because the party to whom they were addressed subsequently ceased to be a co-party."[17]

Delaware's jurisprudence on Rule 13(g) is clear. If there is an existing cross claim at the time of the dismissal of a party, that cross claim survives the dismissal of the plaintiff's claims against that party. In the instant case, Christiana Care filed a cross claim against Manor Care in its initial Answer filed on April, 19, 2021. Similarly when Manor Care filed its answer on November 30, 2021, the cross claim against Christiana Care was asserted. The language of each parties cross-claims against the other was virtually identical.

---

[14] *See id*.; *see also* Fed. R. Civ. P. 13; *Samoluk v. Basco, Inc.,* 1989 WL 135703, at *1–2 (Del. Super. Nov. 3, 1989) (acknowledging that federal cases interpreting Rule 13 are "helpful" because Delaware's version is "substantially the same as" the Rule 13 under the Federal Rules).

[15] *See Wake v. United States*, 89 F.3d 53, 63 (2nd Cir. 1996) (emphasis added) (quoting *Glaziers & Glassworkers Union v. Newbridge Secs.*, 823 F. Supp. 1188, 1190 (E.D.Pa.1993)).

[16] *See Samoluk*, 1989 WL 135703, at *1–2 (citing *Aetna Ins. Co. v. Newton,* 398 F.2d 729, 734 (3d Cir. 1968)).

[17] *Washington House Condominium Association of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *9 (Del. Super. Aug. 8, 2017); *see also Hilbert v. Metropolitan Property and Casualty Insurance Company*, 2022 WL 713330, at *1 (Del. Super. Mar. 9, 2022).

Manor Care also asserts that the Christiana Care cross claim should be dismissed because there are no factual allegations to support the claim for indemnity and contribution. The language of Christiana Care's crossclaim is not only the standard language used by defendants, but it is essentially the same language used by Manor Care in its cross claim against Christiana Care. The claim is well pled.

Plaintiff alleges joint and several liability against all defendants which undercuts Manor Care's argument that the injuries/harm is different as to each defendant. As Christiana Care has stated a valid claim for contribution and/or indemnification against Manor Care, and this claim was asserted pre dismissal of plaintiff's direct claims against Manor Care, the cross claims for contribution and/or indemnity survive the instant motion to dismiss.

Plaintiff and Christiana Care maintain that allowing both an arbitration proceeding as to plaintiff's claims against Manor Care, and a jury trial where Manor Care's claims will be assessed by virtue of Christiana Care's crossclaims, constitutes a waste of resources and allows for the possibility of double recovery and/or inconsistent results. The Court sympathizes, and agrees, with these arguments. In addition, the purpose behind the arbitration provision will not be served. The stated purpose of the Arbitration Agreement at issue is that "the parties agree that they will mutually benefit from a speedy and just resolution." Rather than a just and speedy resolution, there will be separate proceedings.

If the Court was operating on a clean slate, it would deny Manor Care's motion and require all of the claims to proceed in this Court before a jury. But the Court is not operating on a clean slate. Delaware Courts have consistently opined that it is the public policy of this state to favor contractual arbitration clauses. The Court is bound by this jurisprudence, even if the result defies logic (as it does here). Because the Court retains jurisdiction over plaintiff's direct claims against Manor Care and Christiana Care's cross claims against Manor Care, it will exercise its inherent authority over this case to do what it can to ensure that there is not double recovery nor an inconsistent result.[18] While the better course in this case would be litigate the entire matter in this Court, the existence of the arbitration agreement and Delaware's well-settled public policy favoring arbitration compels the Court to work harder to ensure that the chances of a double recovery or inconsistent result are diminished and/or eliminated.[19]

## CONCLUSION

For the above reasons Manor Care's Motion to Dismiss is **GRANTED** as to plaintiff's direct claims and **DENIED** as to Christiana Care's cross claims for contribution and/or indemnity.

---

[18] In its Reply Brief, Manor Care raises the question of staying the instant matter pending resolution of the arbitration hearing. At this point, the Court will not entertain this request. If any party wishes to stay then they should file the appropriate motion.

[19] What effect the final decision made in the arbitration proceeding has on the instant action is not before the court today and awaits another day. This issue does cause this Court some concern. *See Sutch v. State Farm Mut. Auto Ins. Co.*, 672 A.2d 17 (Del. 1995). But again, that is for another day.

**IT IS SO ORDERED**.

*Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:     *File & ServeXpress*